UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JAMES THOMAS** | **CIVIL ACTION** |
| **VERSUS** | **NO: 12-1315** |
| **ROCKIN D MARINE SERVICES, LLC** | **SECTION: "A" (4)** |

### ORDER

Before the Court is a **Motion for Protective Order and/or Quash Subpoena to Non-Party (R. Doc. 62)**, filed by a non-party, Western Geco, L.L.C., ("Geco"), requesting that the Court quash a subpoena propounded on it by Plaintiff, James Thomas, ("Thomas") or else enter a protective order to that effect. The motion is opposed (R. Doc. 74). The motion was heard by oral argument on January 16, 2013.

### I.     Factual Background

Thomas filed this personal injury lawsuit against Rockin D pursuant to the Jones Act, 46 U.S.C. § 30104, *et seq.* (R. Doc. 1, p. 1).[1] Thomas' complaint alleges that he worked as a deckhand and relief engineer on the M/V SEA CECILE, a vessel owned and operated by Rockin D. (R. Doc. 1, pp. 1-2). Thomas alleges that he sustained serious, disabling, and permanent injuries to his spine

---

[1] Thomas does not explicitly cite to a portion of the Jones Act in his Complaint, except that which establishes this court's jurisdiction: 46 U.S.C. § 688. (R. Doc. 1, p. 1).

and extremities when the overboard ladder on the M/V SEA CECILE broke free and fell on top of him. (R. Doc. 1, p. 2). He further alleges that his injuries were proximately caused by the negligence of Rockin D, and seeks $5,000,000.00 in damages for past and future pain and suffering, medical expenses, and lost wages, as well as maintenance and cure benefits. (R. Doc. 1, pp. 2-3).

On November 28, 2012, Thomas served both a subpoena as a "notice of records deposition" on Geco. (R. Doc. 62-3, pp. 1, 4). The subpoena carried a return date of December 14, 2012, and the "notice of records deposition" was scheduled to take place on the same date.[2] The subpoena required Geco to produce six types of documents, all of which Geco contests. (R. Doc. 62-3, p. 3). Subsequently, Geco filed this motion, requesting an Order from the Court either quashing Thomas' subpoena directed towards it, or else entering a protective order. The motion is opposed.

## II.   Standard of Review

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Rule 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The discovery rules are accorded broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 177 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Further, it is well established that "control of

---

[2]The records deposition stated that "no appearance will be necessary if the documents requested are produced promptly." (R. Doc. 62-3, p. 1). Geco does not appear to have contested the "records deposition."

discovery is committed to the sound discretion of the trial court . . ." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009); *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1096 (6th Cir. 1994).

Under Rule 26(b)(2)(C), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. *Id.* In assessing whether the burden of the discovery outweighs its benefit, a court must consider: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. *Id.* at 26(b)(2)(C)(iii).

The decision to enter a protective order is within the Court's discretion. *Thomas v. Int'l Bus. Mach.*, 48 F.3d 478, 482 (10th Cir. 1995). Federal Rule of Civil Procedure 26(c) governs the issuance of protective orders. It provides in pertinent part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . . The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . .

Rule 26(c)(1). Rule 26(c), however, contains a requirement that good cause be shown to support the issuance of a protective order, providing that "the burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir.1998);

*see also Baggs v. Highland Towing, L.L.C.*, No. 99-1318, 1999 WL 539459, at *2 (E.D. La. July 22, 1999) (finding that Rule 26(c)(2) orders may be issued only when the moving party makes "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.").

Rule 26(c)(1) permits a party to seek protective order from the Court, although "[t]he motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." *Id.*

Under Rule 45, "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." *Id.* At 45(c)(1). A motion for a subpoena must be quashed or modified where, *inter alia*, the subpoena "(i) fails to allow a reasonable time to comply . . .(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Rule 45(c)(3)(A). A court may, in lieu of the above, "order appearance or production under specified conditions if the serving party (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and (ii) ensures that the subpoenaed person will be reasonably compensated." *Id.* at 45(c)(3)(C).

### III.   Analysis

In support of its motion, Geco argues that the request in this case is overbroad. Specifically, it argues that it would require an "extraordinary" amount of time from a third party. (R. Doc. 62-2, p. 2). Further, the subpoena requests information for a vessel - the M/V SEA CECILE - which is not owned, operated, crewed, or in the possession of Geco, but by Rockin D. *Id.* Therefore, Geco

4

requests that the Court evaluate the subpoena to determine what information should be produced by Geco, and what information should be produced by Rockin D. *Id.* at 3.  In opposition, Thomas does not generally oppose Geco's rendition of the facts, but takes issue with Geco's characterization of each of the requests.

Geco provides an argument for each of the six requested items in its motion to quash, which will be discussed in turn.

> 1. PRODUCE ANY AND ALL INVESTIGATIVE REPORTS, CORRESPONDENCE, ELECTRONIC EMAILS, DIAGRAMS, AND/OR ANY OTHER WRITTEN DOCUMENTS CONCERNING THE ACCIDENT OF JAMES THOMAS ABOARD THE M/V SEA CECILE ON 4/04/2012.

(R. Doc. 62-3, p. 3).  Geco argues that the request is overbroad because "written documents" and "investigative reports" could mean virtually anything.  (R. Doc. 62-2, pp. 5-6).  Nonetheless, Geco states that it has searched its files but to date has found little relevant information.  *Id.* at 6.  In opposition, Thomas argues that Request No. 1 "cannot be more specific."  (R. Doc. 74, p. 1).

At oral argument, Geco argued that the "investigative reports" were records made in anticipation of litigation and therefore were subject to work-product privilege protections.  The Court stated that if the investigation was done after the retention of an attorney, and was undertaken at the attorney's request, the documents could fall under the privilege.  However, if the investigation was done as part of Geco's normal course of business, the records were not protected.  Because Geco failed to specify when and for what purpose it had generated the records, the Court denied its request for a protective order thereto.

> 2. PRODUCE ANY PHOTOGRAPHS, VIDEO TAPE FOOTAGE, AND/OR ANY DIGITAL RECORDING FOOTAGE SHOWING THE ACCIDENT, JAMES THOMAS, M.V SEA CECILE AND/OR THE ACCIDENT SITE.

(R. Doc. 62-3, p. 3).  Geco argues that the request is not reasonably limited in time and scope, and that "accident site" is not adequately defined.  (R. Doc. 62-2, p. 6).  In opposition, Thomas argues that the request is limited to the time when the M/V SEA CECILE worked for Geco; therefore, the "request is self limiting in time due to the charter agreement period."  (R. Doc. 74, p. 2).

At oral argument, the parties stated that they had reached an agreement regarding production of the photographs, videos, and other discovery, although an issue remained regarding payment for the cost of producing the same.  Geco stated that if the record cost was de minimus, it would not contest producing the records; however, if the cost was substantial, Thomas agreed that he should bear the cost.  The threshold for cost-shifting was not discussed at oral argument, although the Court stated that the parties remained free to contest the cost of production if circumstances warranted the same.

> 3. PRODUCE ANY SAFETY RULES AND/OR HANDBOOKS FURNISHED CREWS OF ROCKIN D MARINE CONCERNING SAFETY AND/OR SAFETY POLICY.
>
> 4. PRODUCE ANY AND ALL SAFETY RULES OR PROCEDURES APPLICABLE AND/OR REQUIRED BY WESTERN GECO, LLC AND/OR SCLUMBERGER PERTAINING TO THE OPERATIONS TAKING PLACE AT THE TIME OF COMPLAINANT'S ACCIDENT OF 4/04.2012.

(R. Doc. 62-3, p. 3).  Geco argues that neither "safety rules" nor "procedures" are identified in the instant request. (R. Doc. 62-2, p. 7).  Moreover, as Rockin D would have produced and promulgated its own safety procedures, this information should be produced by Rockin D.  *Id.*  In opposition,

Thomas argues that this is a "simple request," as in chartering contracts such as this one "the chartered vessel is required to follow special safety standards of the chartering company." (R. Doc. 74, p. 2).

At oral argument, Geco contended that the requests were overly broad, vague, and could be properly obtained from Rockin D in this case, as Rockin D had operated the vessel at the time of the accident and would therefore be responsible for promulgating the necessary safety rules.

In opposition, Thomas reiterated his arguments, and stated that the basis for his belief that Geco had mandated certain safety rules stemmed from "general practice" in the maritime industry. Thomas argued that its request was merely that Geco "look" for the records. Thomas stated that in particular it was looking for requirements for "securing parts of the vessel," "watertight integrity," and Geco's "general safety rules in a handbook."

The Court found that for these three specific requests, Geco was required to search its records to determine whether it had any responsive documents. The motion to quash was otherwise granted.

> 5. PRODUCE THE CHARTER AGREEMENT WITH ROCKIN D CONCERNING THE M/V SEA CECILE IN EFFECT DURING 2011 AND/OR 2012.

(R. Doc. 62-3, p. 3). Geco argues that is information would be clearly more easily available to Rockin D. (R. Doc. 62-2, p. 8). Thomas argues in conclusory fashion that this request is not overbroad. (R. Doc. 74, p. 2).

At oral argument, the Court found that if the document was reasonably accessible to Geco, it should be produced notwithstanding whether it could also have been acquired from Rockin D. The Court ordered the same.

> 6. PRODUCE ANY AND ALL SAFETY MEETING RECORDS AND ANY INSPECTION RECORDS PERTAINING TO THE M/V SEA CECILE DURING 2011 AND/OR 2012.

(R. Doc. 62-3, p. 3). Geco argues that "records" is not clearly defined, and potentially overbroad as a result. (R. Doc. 62-2, p. 8). Moreover, the documents are better sought from Rockin D, as it was the owner/operator of the M/V SEA CECILE. *Id.* at 9. In opposition, Thomas argues that the request is "common," as "in these charter relationships the charterer requires and holds safety meetings with the vessel operator." (R. Doc. 74, p. 2). At oral argument the parties did not raise this issue. The Court finds that Geco's motion is abandoned as pertains to this request.

Finally, although the Court did not specify a time for Geco to search its records and produce any responsive files, it now orders Geco to do so no later than fourteen (14) days as of the issuance of this Order.

**IV.   Conclusion**

Accordingly,

**IT IS ORDERED** that the **Motion for Protective Order and/or Quash Subpoena to Non-Party (R. Doc. 62)**, filed by non-party witness, Western Geco, L.L.C., ("Geco") is **GRANTED** in part, **DENIED** in part, and **DENIED AS MOOT** in part.

It is **DENIED** as to Items Nos. 1, 5, and 6.

It is **DENIED** in part as to Items Nos. 3 and 4. Geco is required to search its records for any information "securing parts of the vessel," "watertight integrity," and Geco's "general safety rules in a handbook."

It is **GRANTED** as to Items Nos. 3 and 4 in all other respects.

It is **DENIED AS MOOT** as to Item No. 2, as specified at the January 16, 2013 oral argument.

**IT IS FURTHER ORDERED** that Geco shall produce all relevant information no later than fourteen(14) days of the issuance of this Order.

New Orleans, Louisiana, this 21st day of February 2013.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**