**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**JAMES THOMAS**                                    **CIVIL ACTION**

**VERSUS**                                          **NO: 12-1315**

**ROCKIN D MARINE SERVICES, LLC**                   **SECTION: "A" (4)**

## ORDER

Before the Court is a **Motion for Sanctions for Failing to Produce Statements of Co-Workers (R. Doc. 117)**, filed by Plaintiff, James Thomas, ("Thomas"), seeking an Order from the Court imposing sanctions on Defendant, Rockin D Marine Services, LLC, ("Rockin D") for failing to produce "various statements of co-workers, for violating Rule 26 of the Federal Rules of Civil Procedure, and for systematic abuse of discovery." (R. Doc. 117, p. 1). The motion is opposed (R. Doc. 130), and Thomas has filed a Supplemental Memorandum (R. Doc. 147).[1] The motion was heard in part by oral argument on Wednesday, April 3, 2013, continued until April 10, 2013, on which date hearings on the motion were concluded.

_____

[1]Thomas has also filed a Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 30(d)(2) (R. Doc. 119), which also relies in part on Rockin D's deposition conduct. However, there is no undue overlap between R. Docs. 117/147 and 119 because while R. Docs. 117/147 seek sanctions based in part on the deposition of Bruce Kennedy ("Kennedy"), R. Doc. 119 pertains to the depositions of Mark Clark ("Clark") and Thomas. Therefore, the determination and sanction of R. Docs. 117/147, which are at issue here, should play no role in determination of sanctions in connection with R. Doc. 119. The only significant overlap between the R. Docs. 117/147 and R. Doc. 119 is at the oral argument for the former set of documents, Thomas requested the opportunity to re-depose Clark based on the information which was obtained in Kennedy's deposition. The Court need not consider R. Docs. 117/147 and R. Doc. 119 simultaneously.

## I.      Background

Thomas filed this personal injury lawsuit against Rockin D pursuant to the Jones Act, 46 U.S.C. § 30104, *et seq*.  (R. Doc. 1, p. 1).[2]  Thomas' complaint alleges that he worked as a deckhand and relief engineer on the M/V SEA CECILE, a vessel owned and operated by Rockin D.  (R. Doc. 1, pp. 1-2).  Thomas alleges that he sustained serious, disabling, and permanent injuries to his spine and extremities when the overboard ladder on the M/V SEA CECILE broke free and fell on top of him. (R. Doc. 1, p. 2).  He further alleges that his injuries were proximately caused by the negligence of Rockin D, and seeks $5,000,000.00 in damages for past and future pain and suffering, medical expenses, and lost wages, as well as maintenance and cure benefits.  (R. Doc. 1, pp. 2-3).

As to the instant motion, Thomas requests sanctions against Rockin D for, *inter alia*, its failure to produce statements of co-workers.  Thomas also requests attorney's fees and costs arising in connection with the instant motion.  The motion is opposed, and Thomas has filed a supplemental memorandum.

## II.     Standard of Review

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense."  Rule 26(b)(1).  The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  *Id*.  The discovery rules are accorded broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 177 (1979).  Nevertheless, discovery does have "ultimate and

---

[2]Thomas does not explicitly cite to a portion of the Jones Act in his Complaint, except that which establishes this court's jurisdiction: 46 U.S.C. § 688.  (R. Doc. 1, p. 1).

necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Further, it is well established that "control of discovery is committed to the sound discretion of the trial court . . . ." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009); *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1096 (6th Cir. 1994).

Under Rule 26(b)(2)(C), discovery may be limited if, *inter alia*: (2) the party seeking discovery has had *ample opportunity to obtain the discovery sought*. *Id.* (emphasis added). In assessing whether the burden of the discovery outweighs its benefit, a court must consider: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. *Id.* at 26(b)(2)(C)(iii).

Rule 26 requires that parties both identify witnesses and disclose documents that they plan to rely on to support their defenses, and to timely supplement their disclosures upon discovering that their disclosures were incomplete or incorrect. *Id.* at 26(a)(1)(A). Courts in this district have noted that initial disclosures "must be supplemented later in the proceedings if the party learns that the disclosure made 'is incomplete or incorrect.'" *Boutain v. Radiator Specialty Co.*, No. 11-1907, 2013 WL 757625, at *1 (E.D. La. Feb. 27, 2013).

Rule 34 provides that a party may request another party to produce "any designated documents or electronically stored information . . . stored in any medium from which information can be obtained." *Id.* at 34(a)(1)(A). This request "must describe with reasonable particularity each item or category of items to be inspected." *Id.* at (b)(1)(A). "For each item or category, the response must either state that inspection . . . will be permitted as requested or state an objection to the request,

3

including the reasons."  *Id.* at (b)(2)(B).

Rule 37 provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) . . . the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Rule 37(c)(1). The Court may also, "in addition or instead of this sanction," order payment of reasonable attorney's fees, as well as "other appropriate sanctions."  *Id.* at 37(c)(1)(A), (C).  Rule 37 sanctions are ultimately guided by the purpose of reimbursing the movant and deterring further discovery violations.  *See Day v. Allstate Insurance Co.*, 788 F.2d 1110, 1114 (5th Cir. 1986).[3]

Rule 37 further provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection.  This motion may be made if: . . . (iii) a party fails to answer an interrogatory submitted under Rule 33, or (iv) a party fails to respond that inspection will be permitted - or fails to permit inspection - as requested under Rule 34."  *Id.* at 37(a)(3)(B). Additionally, "[i]f the motion is granted - or if the . . . requested discovery is provided after the motion was filed - the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  *Id.* at 37(a)(5)(A).

---

[3]In the Fifth Circuit, courts weigh four factors in determining whether a party's failure to disclose is harmless: (1) the importance of the evidence; (2) the prejudice to the opposing party; (3) the possibility of a continuance to cure the prejudice; and (4) the party's explanation for failing to disclose the evidence.  *Bailey v. Shell Western E & P, Inc.*, 609 F.3d 710, 729 (5th Cir. 2010); *Boutain*, 2013 WL 757625, at *1 (extending "harmless" test to "substantial justification).

III.   **Analysis**

    A.   **Merits of Motion - Original R. Doc. 117**

        1.   **Rule 26 Disclosures**

As part of Rockin D's initial disclosures, Rockin D made the following submission:

> **A copy of or description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment.**

    (A)    Plaintiff's personnel file and earnings records.
    (B)    Rockin "D" Marine Services, LLC vessel accident report dated April 4, 2012.
    (C)    Report of marine accident, injury or death (USCG 2692) dated April 4, 2012.
    (D)    Logs from the M/V SEA CECILE
        March 23, 2012 through April 7, 2012.
    (E)    Written duties and responsibility of the deckhand and AB.

(R. Doc. 117-3, p. 3).

Thomas argues that this disclosure was insufficient in several respects.

    a.   **Statements of Company Employees**

First, Thomas argues that Rockin D failed to produce statements taken by the company officials and employees in the ordinary course of business the day after the April 4, 2012 accident occurred.  (R. Doc. 117-1, p. 2).  According to Thomas at oral argument, these statements were taken by Mark Detillier, Jr., ("Detillier") Rockin D's Health Safety & Environmental officer.  *Id.*  Thomas argues that these statements were "obtained as a result of a company investigation which was performed in the ordinary course of business."  *Id.*  However, Thomas argues that he discovered the

5

existence of the statements on February 28, 2013, when he deposed Detillier.[4]  The statements were not provided at Detillier's deposition, but after Thomas arranged a discovery conference.  *Id.* at 3.

In opposition, Rockin D argued generally that the statements had been produced and therefore the motion should be denied as moot in this respect.  (R. Doc. 130, p. 3).

At the April 3, 2013 oral argument his particular issue was determined on the basis of Rockin D's Production Responses, and the Court did not rule on the applicability of Rockin D's Rule 26(a) disclosures.  However, at the April 10, 2013 oral argument, the Court reiterated that under the Rule 26(a) standard, the appropriate inquiry was whether Rockin D *intended* to use the statements, and there was no indication that it intended to use them.  Therefore, to the degree Rockin D had failed to produce these statements in connection with its Rule 26(a) disclosures, such failure was not sanctionable.

b.      **Detillier's Notes**

Second, Thomas argues that Detillier "testified that he made notes of his investigation in the ordinary course of his duties for defendant concerning the accident herein."  (R. Doc. 117-1, p. 3).  Thomas argues that this failure to disclose the statements violates Rule 26(a).  *Id.*  Rockin D's opposition does not explicitly refer to these "notes."

At the April 3, 2013 oral argument, Thomas argued that these statements had taken the form of a "tally book."  Rockin D argued that Detillier had taken these notes for his private business use.  The Court found that Thomas' motion, as it pertained to Rockin D's production of relevant pages of this "tally book," was not discoverable under Rule 26(a) because Rockin D stated it would not be using the pages of the "tally book" in its defense, and Rule 26(a) disclosures were subject to Rockin D's

_____

[4]Thomas argues that he also deposed Captain Mark Clark ("Clark") on that date.  *Id.*

6

interpretation of what would be useful in that defense.  Rockin D stated that in any event the request was moot because Rockin D had already produced the requested notes to Thomas.  The Court acknowledged the same, and found that the request for production was moot.

### c.    Hoyle's Statements

Thomas also argues that Rockin D has refused to produce the statements taken by its insurance claims adjuster, Jack Hoyle, on May 19, 2012, under what Rockin D believes are erroneous assertions of both the attorney-client privilege and the work-product doctrine.  (R. Doc. 117).

In opposition, Rockin D argues that it did not intend to use Hoyle's statements at trial, and that they were not subject to production under the attorney-client privilege and the work product doctrine. (R. Doc. 130, p. 3).  Rockin D also argues that Thomas himself "intentionally failed to disclose surreptitiously recorded conversations and text messages in Rule 26 Disclosures." *Id.*

At the April 3, 2013 oral argument, the parties reiterated their arguments.  The Court finds that for the same reasons as explained in connection with Detillier's notes and the statements of company employees, Rockin D was not obligated to produce Hoyle's statements to Thomas as part of its Rule 26 disclosures.  The Court need not further consider whether Rockin D's conduct in "withholding" these documents was sanctionable under Rule 26.

### 2.    Discovery Requests

Thomas further argues that Rockin D failed to produce certain statements in response to Thomas' subsequent discovery requests.  As with his Rule 26(a) arguments, Thomas points to the same three categories of statements: (1) statements of company employees, (2) notes composed by Mark Detillier, Jr., ("Detillier"), and (3) statements taken by Hoyle.

Specifically, Request No. 3, and Rockin D's response, were as follows:

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 3:**
> True copies of any and all statements taken from any and all co-workers involved in this litigation.

**RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS NO. 3:**
> Objection. Rockin "D" objects to Request for Production of Documents No. 3 on the grounds it seeks material protected by attorney/client privilege and constitutes material gathered in anticipation of litigation, and for other reasons as may be alleged at a later date.  Without waiving the objection, statements have been obtained from:
> 1) Mark Clark
> 2) Williams Bryant
> 3) Don Middlebrooks
> 4) Victorino Martires
> Those statements were all obtained by Jack Hoyle on May 19, 2012.

(R. Doc. 117-2, p. 5).  According to Thomas' filing, Rockin D responded to Thomas' discovery requests on August 13, 2012.  (R. Doc. 117-2, p. 11).  Thomas argues, in conclusory fashion, that Rockin D simply failed to respond.

### a.    Statements of Company Employees

As noted above, Thomas argues that the statements Detillier collected from the crew of the SEA CECILE should have been produced in response to Request No. 3.  Thomas argued that these statements, which comprised two sheets of paper attached to Rockin D's opposition at R. Doc. 130-2, were made in the ordinary course of business.  Thomas also argued that these statements were only produced after Thomas had taken Detillier's deposition, although they should have been produced previously in connection with Thomas' Request for Production No. 3.

In opposition, Rockin D argued that its counsel had not obtained knowledge of the statements prior to the deposition of Detillier, despite making diligent efforts to obtain all relevant information

from the client.[5]  Counsel for Rockin D also stated that prior to Detillier's deposition, Detillier did not

state that he had any written documents.[6]  In any event, Rockin D argued that the motion was now

moot because the statements had already been produced.

At the April 10, 2013 oral argument the Court noted that Thomas had objected to proceeding

with Detillier's deposition once he learned that Detillier possessed the statements, but did not have

them available during deposition; however, the deposition was not postponed at that time.  The Court

also noted that Thomas' motion specifically requested to re-depose *Clark*, not *Detillier*, although

Thomas argued that he was also entitled to request Detillier's limited re-deposition under the Federal

Rules.  (R. Doc. 117-1, p. 4).

Rule 30(d)(3) provides that "[a]t any time during a deposition, the deponent or a party may

move to terminate or limit it on the ground that it is being conducted in bad faith. . . . If the objecting

. . . party so demands, the deposition must be suspended for the time necessary to obtain an order." *Id.*

Although Thomas failed to move for an order under 30(d)(3), courts routinely consider deposition

disputes on their merits regardless of technical compliance.  "[T]here are many occasions in which a

party taking a deposition may ask a question a deponent or counsel consider improper, but will be

unable to show is asked in bad faith . . . . The courts should apply a more practical and realistic

approach evaluating each motion on a case-by-case basis." *Brincko v. Rio Properties, Inc.*, 278 F.R.D.

576, 584 (D. Nev. 2011) (finding, in Rule 30(c) dispute, that Rule 37(a) and Rule 30(d)(3) were

---

[5]Counsel also stated that when responding to Thomas' discovery request, it had sent the discovery to Rockin D, asked Rockin D to provide them with any statements they had taken of any witness, and "produced what [they] were given, in terms of accident reports whether written, with written statements."

[6]Detillier stated only that he met with the crew when the vessel came in, but did not state that anyone had written any statements.  Counsel also stated that the conversation was not recorded.

available as deposition enforcement mechanisms).

This flexible, practical approach is reflected in the majority of other recent cases. *See, e.g.*, *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 589 n.4 (S.D. Tex. 2011) (finding that a party's failure to file a motion did not foreclose consideration of the merits of a discovery dispute); *Coach, Inc. v. Hubert Keller, Inc.*, --- F. Supp. 2d ----, 2012 WL 6714388, at *6 (S.D. Ga. Dec. 19, 2012) (reaching merits of motion filed by party other than deponent); *ACF Western USA, Inc. v. Travelers Casualty Co. of America*, 2012 WL 5838865, at *3-*4 (E.D. Cal. Nov. 16, 2012) (reaching merits of objections even after noting that motion was procedurally improper); *Youngblood v. City of Paducah*, 2011 WL 6749024, at *2 (W.D. Ky. Dec. 22, 2011) (reaching merits of dispute when it arose under opposing party's motion to compel).

Accordingly, in other cases where a party's failure to meet its discovery obligations was only unveiled during a deposition, courts have focused on the content of the withheld material, not the form of presentation, when considering whether a re-deposition should be authorized. *See Gotch v. Ensco Offshore Co.*, 168 F.R.D. 567, 570-71 (W.D. La. 1996). Where a party has diligently sought information needed to conduct a "meaningful[]" deposition, but is nonetheless compromised by another party's discovery failures, a limited redeposition on the topic of the undisclosed information is warranted. *Martin v. Fidelity National Title Insurance Co.*, No. 09-4195, 2011 WL 3349843, at *4 (E.D. La. Aug. 3, 2011). Indeed, a re-deposition can occur even in the absence of dilatory conduct, where new relevant evidence has been uncovered. *See, e.g.*, *J.M. Smith v. Ciolino Pharmacy Wholesale Distributors, LLC*, No. 10-1483, 2012 WL 5289370, at *4 (E.D. La. Oct. 24, 2012) (finding that limited redeposition of expert was warranted where expert had issued supplemental report which

10

relied on new facts).

Here, the Court notes that the statements of company employees should have been produced prior to Detillier's and Clark's depositions, and Thomas should have the opportunity to conduct a limited re-deposition regarding the information contained in these statements. Therefore, the Court orders Rockin D to make both Clark and Detillier available for limited re-depositions regarding any statements of company employees. Thomas shall bear the costs of producing Clark and Detillier for re-deposition.

### b.  Detillier Notes

At the April 3, 2013 oral argument, Thomas noted that discovery of the relevant pages of Detillier's "tally book" had been propounded on March 4, 2013. The Court noted that a request for the "tally book" was not delineated in Thomas' prior requests, and 30 days had not elapsed since Thomas' new production request had been propounded. Therefore, the Court found that the request for production was premature insofar as his motion pertained to sanctions for failure to produce the "tally book" excerpts in response to a discovery request. Therefore, the request for production was denied.

### c.  Hoyle's Statements

Thomas reiterated his argument as to why employee statements taken by Hoyle should be produced. In opposition, Rockin D argues that the statements Hoyle took are protected by the attorney-client privilege and the work product doctrine, and that Thomas has not shown that the statements were in fact made in the ordinary course of business. (R. Doc. 130, pp. 4-6). Specifically, Rockin D argues that "[t]he statements obtained by an investigator appointed by its underwriters, after

11

learning plaintiff was represented by counsel, go beyond the ordinary course of business and move into material gathered in anticipation of litigation," and that in fact Thomas commenced suit three days after the statements were taken. *Id.* at 6. Because Thomas has not demonstrated a "substantial need" for the documents, the request should be denied. *Id.* at 5.

Rockin D does not specifically argue that the "additional" statements should not have been produced. However, Rockin D argues that the statements were disclosed in its answer to Interrogatory No. 7. (R. Doc. 130, p. 2). This Interrogatory, and its response, are as follows:

> **INTERROGATORY NO. 7:**
> Who were statements and/or depositions and/or reports given to, if any, concerning the alleged accident herein, and in addition thereto, furnish said persons address, home telephone, employer and position title. Include any governmental agencies.

> **ANSWER TO INTERROGATORY NO. 7:**
> Objection. Rockin "D" objects to Interrogatory No. 7 on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and for other reasons as may be alleged at a later date. Without waiving the objection, Captain Clark prepared a USCG 2692 and a Rockin "D" Vessel Accident Form, both of which have been produced in response to discovery. On April 9, 2012, Mark Detillier of Rockin "D" interviewed plaintiff regarding the incident, but did not take a statement. Detillier made notes of the conversation, and the notes are signed by both plaintiff and Detillier. Additionally, statements have been obtained from the individuals identified in response to Interrogatory No. 4. The statements were taken by Jack Hoyle on May 19, 2012.

(R. Doc. 130-4, p. 5).

Rockin D argues that the production of the statements was objected to in Rockin D's response to the request for the production of documents because they were prepared in anticipation of litigation. Further Rockin D contends that Thomas failed to present evidence of substantial need such that the motion should be granted.

12

Rockin D's responses, as contained at Interrogatory No. 7, were not specifically raised at oral argument by either party although the Court generally addressed Rockin D's objections on the basis of privilege at the April 3, 2013 oral argument.  Therein, the Court overruled Rockin D's objections on basis of assertion of attorney-client privilege and work-product doctrine, as Rockin D provided no proof whether by affidavit or sworn statement from Hoyle that the statements had been in fact taken in anticipation of litigation, and therefore failed to meet its burden to find that either the attorney-client privilege or work product doctrine applied.[7]

Accordingly, the Court granted Thomas' request as to production of any statements taken by Hoyle.  Rockin D shall produce these statements no later than ten days after the issuance of this written order.

### 4.    Sanctions Arising in Connection with R. Doc. 117

The next issue is whether any "sanctions" are to be imposed according to the Court's Rulings as to Thomas' original Motion for Sanctions (R. Doc. 117).

Thomas explicitly referenced Rule 26 in support of "sanctions, and also requested a "re-deposition," which is a sanction brought under Rules 30 and 37.  The plain intent of Thomas' motion is to advocate for broad-based "sanctions" even though specific Rules may not be referenced.

The Court has found that Rockin D's conduct is not sanctionable under Rule 26(a) for failure to disclose.[8]  However it has compelled Rockin D to produce Hoyle's statements mentioned in Request

---

[7]The Court notes that although this Request was part of an August 13, 2012 response which the Court had already ruled on (R. Doc. 60), Rockin D did not oppose the re-argument of this particular production request at either the April 3, 2013 or April 10, 2013 oral arguments.  Therefore, notwithstanding the Court's conclusions in later sections of this Order, the Court finds that production of Hoyle's statements is warranted here.

[8]As noted below, the Court allowed for the re-deposition of Clark on the issue of verifying signatures on several documents submitted along with Thomas' supplemental submission.

for Production No. 3, and provided Thomas the opportunity to conduct limited re-depositions of both

Clark and Detillier regarding employee statements, if Thomas is willing to pay the costs involved.  At

the April 3, 2013 oral argument, the Court also awarded Thomas his reasonable attorney's fees and

costs, and herein limits these costs to those incurred in researching, writing, and arguing his original

Motion for Sanctions (R. Doc. 117).  The Court does not find that any additional sanctions in

connection with the complained-of conduct in Thomas' original Motion for Sanctions are warranted

here.

Thomas also argues that the Court can also award him attorney's fees for Rockin D's

"systematic abuse of discovery."  (R. Doc. 117).  To claim that this litigation has been "contentious"

would be an understatement, and it is safe to say that there appears to be no love lost between the

parties' counsel in this case.[9]

At present, the undersigned has issued several discovery orders (R. Docs. 32, 60, 61, 88, 103,

---

[9]Rockin D also contends that instead of providing a supporting argument, Thomas chose to "bootstrap his argument with a personal attack on Rockin 'D''s counsel." *Id.* at 4.  Although not specifically an attack on the motion at hand, the Court would be remiss if it did not acknowledge that the characterization of Rockin D's counsel, Robert Reich, ("Reich") by Thomas' counsel, Thomas Discon, ("Discon") has not only been quite charged, but has grown more unflattering as this litigation has progressed.  *See, e.g.*, (R. Doc. 40, p. 3) ("No harm will occur to . . . Mr. Reich, except his ego"); (R. Doc. 45, p. 2) (referring to "Mr. Reich's biased opinion"); (R. Doc. 98-1, p. 3) (accusing Mr. Reich of "playing games"); (R. Doc. 119-1, pp. 5-6) (accusing Mr. Reich of "setting the combative tone" of a deposition, "laugh[ing] in the plaintiff's face," "[i]ntentionally mischaracteriz[ing]" deposition testimony, "abus[ing] the rules of procedure," and "not professionally handl[ing] . . . depositions."); (R. Doc. 147, p. 1) ("The abuse of discovery by Mr. Reich continues . . . . It is now to the level of deceitfulness.").  Discon also apparently seeks to impute Reich's bad faith by referencing Reich's actions in unrelated litigation: "Mr. Reich has been sanctioned before concerning failure to produce statements claimed to be attorney work product . . . . Mr. Reich knows that just because statements were taken by an adjuster does not mean that the statements are protected."  (R. Doc. 117-1, p. 3).  Finally, at the April 10, 2013 oral argument, Discon commented that he was "not sure what world Mr. Reich is from, but it's not anywhere close to here."  (Oral Argument, Apr. 10, 2013).  Discon has even sought to apply Reich's conduct reflexively to Rockin D's other counsel of record in this case, Lawrence Plunkett, whom he asserted was "drinking the same kool aid that Mr. Reich drinks."  (Oral Argument, Nov. 21, 2012)  Occasional leaks in the vitriolic spigot are inevitable during the course of contentious litigation.  However, even assuming *arguendo* that all of the discovery disputes in this case have unfolded in exactly the way Thomas describes them, allowing the spigot to burst and inundate the public record to this degree reflects poorly on all counsel in this dispute.

143, 148), denied as moot two more (R. Docs. 81, 116), and denied one motion for reconsideration (R. Doc. 83).  During that time the undersigned has become familiar with both the case and posture of the litigants.  Of note is the fact that Thomas has been awarded attorney's fees on one occasion, (R. Doc. 96) and that Rockin D has failed to submit documents in compliance with the Court's Order on one other occasion.  (R. Doc. 61).  The Court has also been obligated to supervise a portion of Thomas' deposition, (R. Docs. 50, 51) and the parties have attempted to obtain the Court's assistance with a discovery related dispute on at least one other occasion.  As with virtually all discovery disputes, Thomas has not been entirely blameless in the course of these events.  *See* (R. Doc. 143) (reminding Thomas of his duty to supplement medical records).  Although the balance of improper conduct in this case may currently tilt toward Rockin D's side of the ledger, it is not so unbalanced that the Court finds that Thomas' request for sanctions for Rockin D's alleged "systematic abuse" of discovery is warranted.

**B.**     **Merits of Supplemental Submission - R. Doc. 147**

Thomas has also filed into the record a Supplemental Memorandum in Support of his original Motion for Sanctions (R. Doc. 147).  In this supplemental submission Thomas details further discovery "misconduct "supporting his arguments that sanctions should be imposed, which only came to light during the March 26, 2013 deposition of Bruce Kennedy, Rockin D's Vice President ("Kennedy") (R. Doc. 147).

The new documents at issue in Thomas' Supplemental Memorandum are (1) inspection documents of the SEA CECILE taken shortly before and after Thomas' accident, ("Inspection Documents") and (2) a "Root Cause Analysis" of the accident which was composed jointly by Rockin

15

D and a third party.  (R. Docs. 147, pp. 1-2; 147-1; 147-6).  Thomas argues that the Inspection Documents were produced at Kennedy's deposition.  (R. Doc. 147).  He also argues that he "learned" of the Root Cause Analysis during Kennedy's deposition, and has attached the same to his motion; it is not clear whether this document was actually produced during the deposition.  (R. Doc. 147).[10]

Thomas argues that both categories of documents should have been produced or listed in connection with Rockin D's Rule 26 disclosures, or in response to his First Set of Requests for Production of Documents No. 8, which sought survey or inspection reports.  (R. Doc. 147, pp. 1-2). Thomas also argues that the Inspection Documents should have been produced in connection with his "Third Set of Interrogatories."  *Id.*

Based on these new developments, Thomas requests new, more drastic "sanctions" under Rule 37(b), including striking Rockin D's comparative fault defense, deeming both the Inspection Documents and the Root Cause Analysis admissible, and awarding reasonable attorney's fees and costs.  (R. Doc. 147, pp. 5-6).

At the April 3, 2013 oral argument, the Court noted that to the degree these documents requested relief in addition to that arising in connection with the initial motion, they were, on the whole, inappropriately presented in the context of an opposition motion.  Nevertheless, the Court considered the parties' arguments to determine whether the circumstances warranted consideration of all, or some, of the merits contained in Thomas' Supplemental Memorandum.[11]

---

[10]At the April 10, 2013 oral argument, Thomas suggested that the document had been produced in response to a discovery request propounded on a third party, Western Geco, ("Geco"), although this was not clear.

[11]The Court notes, however, that Rockin D was unable to submit a motion in opposition prior to the April 3, 2013 oral argument.

16

### 1.      Inspection Documents

In support of his Supplemental Memorandum, Thomas argues that during Kennedy's March 26, 2013 deposition, Thomas learned that "additional Vessel Monthly Safety and Environmental Inspection documents were in the custody of Rockin D . . . concerning safety inspections of the M/V SEA CECILE in the months proceeding and following the [April 4, 2012 accident]." *Id.* These documents were produced at Kennedy's deposition.

The documents reflect that safety inspections were performed on March 28, 2012, March 29, 2012, May 25, 2012, May 30, 2012, and June 23, 2012. (R. Doc. 147-1). The March 28, 2012 and June 23, 2012 documents are signed by Captain Mark Clark, ("Clark") and contain initials from both Clark and "WB," who from the document appears to be William Bryant, the SEA CECILE's engineer ("Bryant"). (R. Doc. 147-1, p. 1). Similarly, the March 29, 2012 document is signed only by Clark. (R. Doc. 147-1, p. 2). The May 25, 2012 document is signed and initialed only by Clark, and the May 30, 2012 document is signed by Clark without any initials. (R. Doc. 147-1, pp. 3-4). Admittedly, the March 28, 2012 and June 23, 2012 documents contain illegible signatures near the top of the pages, although these signatures appear to be attributable to Bryant. (R. Doc. 147-1, pp. 1, 5).

Thomas argues that Rockin D has failed to produce these documents under its Rule 26 disclosure obligations, in response to Thomas' discovery requests, or in connection with the Court's Order on Thomas' prior Motion to Compel, issued on December 10, 2013 (R. Doc. 60). At the April 10, 2013 oral argument, Thomas argued that he had never been told that the inspection document existed.

###### a.      Rule 26 Disclosure

As noted above, Thomas' Rule 26 disclosures, and Rockin D's responses, are as follows:

**2.      A copy of or description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment.**

(A)      Plaintiff's personnel file and earnings records.
(B)      Rockin "D" Marine Services, LLC vessel accident report dated April 4, 2012.
(C)      Report of marine accident, injury or death (USCG 2692) dated April 4, 2012.
(D)      Logs from the M/V SEA CECIL
         March 23, 2012 through April 7, 2012.
(E)      Written duties and responsibility of the deckhand and AB.

(R. Doc. 117-3, p. 3).  According to Thomas, Rule 26(a) obligated Rockin D to disclose the Inspection Documents, the Rule's use of the word "may" should be "interpreted objectively because subjective interpretation allows and invites abuse of discovery by a party."  *Id.* at 3-4.

For reasons stated above, the Court disagrees with Thomas' characterization of Rule 26.  Since Rockin D has not stated that it intends to use these documents to support its claims or defenses, it is not obligated to produce them under Rule 26(a).

###### b.      First Request for Production No. 8; Prior Court Order

Thomas also argues that Rockin D failed to disclose the documents as requested in its First Request for Production No. 8, which he propounded on Rockin D June 20, 2012, and were returned on August 13, 2012.  The discovery at issue included Request for Production No. 8, which stated:

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 8:**
True copies of each survey and/or inspection report made with respect to any equipment, object, substance, device, tool, or vessel involved herein, made in connection with this litigation or made during the years 2010 through the present.

18

**RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS NO. 8:**
Objection. Rockin "D" objects to Request for Production No. 8 on the grounds it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and for other reasons as may be alleged at a later date. Without waiving the objection, attached is a survey of the vessel dated April 27, 2011.

(R. Doc. 147-2, p. 11). This request, and its response, were subject to a prior motion to compel, which was brought before the Court on November 21, 2012. (R. Docs. 35, 60). In the filings made in connection with that discovery motion, Rockin D argued that it had provided a "Condition Evaluation Survey" of the SEA CECILE dated April 27, 2011, and Thomas argued in response that "his request encompassed 2010 as well as 2011." (R. Doc. 60, p. 5).[12] Thomas *himself* argued in a supplemental filing arising in connection with that motion that for Request No. 8, "Defendant produced only the 2011 *survey report* and none for 2010 . . . . Defendant needs to be ordered to produce the *surveys* and the digital photographs created in those *surveys*." (R .Doc. 45, pp. 1-2) (emphasis added).

At the November 21, 2012 oral argument on that motion, the parties focused exclusively on "surveys" when discussing Request for Production No. 8. Thomas stated that he wanted "the other surveys." The Court explicitly asked counsel if Rockin D had "a condition evaluation survey for 2010." Rockin D stated at oral argument that "if that's all [Thomas] wants, if you want one for 2010, I'll inquire with my client, if there is one, we'll provide it . . . if that's all he wants, that's fine." The Court stated that Rockin D"should give it." Thomas did not assert, at that time, that he wished other documents in addition to a 2010 survey.

---

[12]In Thomas' initial motion, he only reiterated the language of Request No. 8 without specifying what documents might be missing. *See* (R. Doc. 35). However, Thomas' supplemental memorandum admitted that Rockin D had in fact produced an April 27, 2011 "survey," and that Rockin D had not produced the "survey" for 2010 as requested. (R. Doc. 45).

19

This specific limitation was reflected in the Court's Order on the motion to compel: "Thomas sought a 2010 survey to show that the senior employees of [Rockin D] had knowledge of the dangerous condition . . . [the Court ordered] a copy of any 2010 survey . . . to be produced by Rockin D to Thomas."  (R. Doc. 60, p.  6).  The Court's Order did not explicitly address production of documents other than a "2010 survey."  Indeed, the Court's Order also stated that Thomas' motion to compel was "denied in all other respects."  (R. Doc. 60, p. 9).  The Court declined to award sanctions at that time.

Seven days after the Court issued its Order, on December 17, 2012, Rockin D provided a Second Supplemental Response to Plaintiff's First Set of Request for Production of Documents (R. Doc. 147-5).  Therein, Rockin D supplemented its original response to No. 8 as follows:

> **RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS NO. 8:**
> Rockin "D" re-asserts, re-avers and reiterates all of its allegations, responses, and objections asserted in its original Responses to Request for Production of Documents. Rockin "D" objects to Request for Production No. 8 on the grounds it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissive evidence and for other reasons as may be alleged at a later date.  Without waiving the objection, Rockin "D" previously produced a survey of the vessel dated April 27, 2011.  Pursuant to the Court's Order, Rockin "D" has reviewed its records and confirm that it did not perform a Condition and Valuation survey of the M/V CECILE in 2010. Rockin "D" previously produced the survey for 2011.  Further, a Top Side only survey was performed by the United States Coast Guard in 2010.  That survey is noted in the expiring 2010 Certificate of Inspection attached hereto.

(R. Doc. 147-5, pp. 1-3).  It is not clear which of Rockin D's counsel's signed this discovery response.

Thomas now argues that the Inspection Documents should have been produced in connection with his Request for Production No. 8, as they were plainly relevant to show that Clark "either personally inspected or had inspected said equipment involved in the accident herein just days before the improperly stowed and secured ladder fell onto . . . Thomas."  (R. Doc. 147, p. 3).  Thomas further

20

argues that at the time that Thomas' motion to compel production was argued and ruled on, he "did not know and did not have any reason to know that actual monthly inspection reports of the M/V Sea Cecile existed in the possession of defense counsel," and Rockin D did not advise the court that such documents might in fact exist. *Id.* at 4.

Although Thomas argues that Rockin D's response "plainly violated" the December 10, 2012 Court Order, this is not immediately apparent from the plain language of the Order. *Compare* (R. Docs. 60, 147, p.4; 147-5, p. 2).[13]  In fact, the Court's Order was limited to the specific arguments brought by the parties, and went no further.  As the Court has stated at other points during this litigation, allowing a party a "do-over" after it makes a strategic election to argue a motion in a specific manner would "contravene the policy of judicial economy."  *Thomas v. Rockin D Marine Services, LLC*, No. 12-1315, 2013 WL 173767, at *3 (E.D. La. Jan. 16, 2013) (declining to "reconsider" Rule 37 motion).  The Court finds that the same standard should apply here.

At the April 10, 2013 oral argument, Thomas argued that it was not fair that the documents had only been produced at that time, as he would not have narrowed the scope of his prior discovery requests if he had known more documents were in existence.  Thomas argued that he had been prejudiced because the inspection document indicates that Captain Clark states that everything "is in order" on his boat, and therefore Thomas did not have the opportunity to ask Clark questions about this issue.

In opposition, Rockin D argued that the discovery requests at issue in Thomas' prior discovery

---

[13]Thomas reiterated that assertion at the April 3, 2013 oral argument.  Therein, Thomas argued that the "inspection documents" had been ordered produced by the Court in its December 10, 2012 Order.  However, Thomas' use of the plural overstates the boundaries of the Court's Order, which was limited to production of the 2010 survey.

requests had been voluntarily narrowed to "condition evaluation surveys" by Thomas in his own written filings prior to the November 21, 2012 oral argument, and that the Court's Order reflected the same.  Moreover, Rockin D argued that the document in question was produced not by Rockin D, but by a third party, Western Geco, ("Geco").  finally, Rockin D argued that the document was not kept in the ordinary course of business.

The Court asked Rockin D why the document had not been produced in response to Request No. 8.  Rockin D argued that midway through Kennedy's deposition, it had asked Kennedy whether there was anything in Rockin D's files that was responsive and that should be produced.  As to why Rockin D had failed to submit the document in connection with its request for production of documents, Rockin D argued that this had been an oversight, that supplementation was prompt after the document was discovered, and that Thomas had suffered no prejudice as a result.

Based on the foregoing, and to avoid any prejudice to Thomas, the Court allowed for a limited re-deposition of Clark to question him regarding the Inspection Documents.  The Court also granted Thomas leave to re-depose Clark and Detillier as to the authenticity of the signatures on the Inspection Documents.  The Court emphasizes that these orders do not represent a *sanction* for Rockin D's failure to disclose the Inspection Documents pursuant to Thomas' Request for Production No. 8; the Court finds that Rockin D's failure to produce the discovery was an oversight, and the fact of a single oversight in a case which had involved a considerable number of discovery motions was not, by itself, sanctionable.[14]

---

[14]Plainly, Thomas' original Request No. 8 pertained to both "inspections" and "surveys."  If in fact Rockin D knew these documents were available prior to the December 10, 2012 oral argument, its failure to produce these documents or inform the Court of their existence would be construed as misleading both the Court and opposing counsel. However for purposes of imposing sanctions, there is insufficient evidence to conclude that Rockin D knew, or should

The Court also notes that Thomas' re-deposition request, which is contained in the body of his original motion, is substantiated by Rule 30 because Thomas only learned of the existence of the Inspection Documents after Clark and Detillier were deposed.[15]  As noted above, re-depositions can be ordered in the absence of bad faith, when new facts are uncovered.  *See J.M. Smith*, 2012 WL 5289370, at *4.

The Court also denied Thomas' request that either the Inspection Documents or the Root Cause Analysis be deemed admissible, as there were no grounds for such a ruling in these circumstances.[16]

---

have known, that the Inspection Documents should have been produced in response to Request No. 8.  Rule 37(d) provides that discovery sanctions can issue when a party "fails to serve its answers, objections, or written response."  Rule 37(d)(1)(A)(ii).  This Rule "has been interpreted to encompass responses which are evasive or misleading," and is enforceable even where production of incorrect documents was a mistake.  *Coane v. Ferrara Pan Candy Co.*, 898 F.2d 1030, 1031-32 & n.1 (5th Cir. 1990); *Covia Partnership v. River Parish Travel Center, Inc.*, 1992 WL 233768, at *3 (E.D. La. Aug, 29, 1992) (Clement, J.) (finding that under Rule 37(d), where a party establishes that a discovery response was "misleading or evasive," a party need not establish a total failure to respond in order to properly request the imposition of sanctions); *see Bell v. Automotive Club of Michigan*, 80 F.R.D. 228, 231 (E.D. Mich. 1978) (finding that party's conduct, as viewed through formal discovery responses, letters to court, and oral statements all suggested that party had acted in bad faith).  However a party's production of documents on the eve of a deposition has not been sanctionable where that party had been given advance notice that "many documents" would be produced.  *See Diabetes Centers of America, Inc. v. Healthpia America, Inc.*, 2008 WL 336382, at *2-*4 (S.D. Tex. Feb. 5, 2008) (citing *Coane*, and finding that even where litigation had been "contentious," Rule 37(d) sanction was not available in case where a document release was made subject to protective order).  Upon finding that a party failed to act in violation of Rule 37(d), the Court may impose any sanction within the ambit of Rule 37(b).  Rule 37(d)(3).  However, imposing Rule 37(d) sanctions in this case would not be consistent with the circumstances of both *Covia* and *Bell*.  Although this litigation has been "contentious" and Rockin D has been the recipient of adverse discovery rulings on more than one occasion, there is no indication that it has risen to the level of comprehensive bad faith, and occasional discovery oversights are to be expected - especially where one party voluntarily limits the prior scope of a discovery request.

[15]  Under this Rule, a person's deposition is "limited to 1 day of 7 hours," which may be extended upon order of the Court where, consistent with Rule 26(b)(2), more time is needed "to fairly examine the deponent."  Rule 30(d)(1).  Here, Clark and Detillier were deposed on the same day, and neither party indicated that Clark's deposition took the entire 7 hour period to complete.

[16]Finally, Thomas argues that he propounded a Third Set of Interrogatories and Requests for Production of Documents upon Rockin D, "attached as Exhibit 6."  (R. Doc. 147, p. 2).  Thomas argues that in this Third Set, Request for Production No. 5 requested "Monthly inspection reports of the Sea Cecile by defendant from 2010 through May 1, 2012."  (R. Doc. 147, pp. 2-3).  Thomas argues that Rockin D "produced inspection reports of the Sea Cecile but conveniently did not produce the [Inspection Documents]."  (R. Doc. 147-1).  Thomas' filing does not support his contentions.  "Exhibit 6" contains only one page of this purported "Third Set of Interrogatories and Requests for Production of Documents," which does not contain Thomas' actual Request for Production No. 5.  *See* (R. Doc. 147-3, p. 1).  It merely contains documents which it claims are Rockin D's "Response to Request for Production of Documents

### 2.    Root Cause Analysis Document; Ed Mott; Randy Adams

Thomas also argues that Kennedy's March 26, 2013 deposition also revealed that Rockin D had in its possession a "Root Cause Analysis," which was composed by Kennedy, the crew of the M/V SEA CECILE, and a representative from the third party Broker/Charterer of the SEA CECILE, Sea Support Ventures, LLC ("Sea Support") on April 4, 2012.  (R. Docs. 147, p. 4; 147-6).

Thomas argues that Rockin D failed to produce the document in either its initial disclosures, or in response to his prior discovery requests.  Thomas does not claim that Rockin D failed to comply with the Court's December 10, 2013 Order when it failed to produce the document.  Thomas also argues that Rockin D violated Rule 26 when it failed to disclose the identity of "Ed Mott," who according to Thomas' Supplemental Memorandum appears to have been a Sea Support employee who assisted in preparing the document.[17]  In opposition, Rockin D argued that this document had been produced by "another company," and that it was first received during Kennedy's deposition.

At the April 3, 2013 oral argument, the Court made no specific rulings.  However, the Court asked Rockin D whether, prior to the time it produced Kennedy for deposition, it had no idea that a root cause analysis performed by another company existed.  Rockin D's counsel, Lawrence Plunkett, stated that he did not know what was learned during the time Kennedy was prepared "during his deposition," because Rockin D's other counsel, Robert Reich, had prepared him.  The Court continued the hearing until April 10, 2013, and ordered Reich to appear in person and to be prepared to answer the Court's remaining questions.

---

No. 5."  *See* (R. Doc. 147-3, pp. 2-29).  As such, his argument does not permit the Court to compare Thomas' request against Rockin' D's response, is in contravention of L.R. 7.4 and need not be considered further here.

[17]This suggestion was confirmed after the Court examined Kennedy's deposition transcript.

24

### a.     Rule 26 Disclosures

Thomas argues that the Root Cause Analysis should have also been produced in connection with Rockin D's Rule 26(a)(ii) disclosure obligations.  (R. Doc. 147, p. 5).  Thomas does not provide any indication that Rockin D sought to use this document as part of its claims and defenses, and the Court has found none.

Thomas also argues that "Ed Mott" was not listed as a potential witness as part of Rockin D's Rule 26(a)(1)(A)(I)  disclosures.  (R. Doc. 147, p. 5).  However, it is not clear from either Thomas' filing or the documents submitted for the Court's consideration how either "Ed Mott" will factor into Rockin D's claims or defenses such that Rockin D's failure to include him in its Rule 26(a) disclosures exposes it to sanctions.  Indeed, the only person actually listed on the "Root Cause Analysis" is "Randy Adams," although Thomas does not argue that this individual should have been included, and did not contest Rockin D's assertion at oral argument that he had no knowledge of the events in quesiton.  (R. Doc. 147-6, p. 1).

Therefore, although neither "Ed Mott" nor "Randy Adams" appears on Rockin D's initial disclosures, the Court finds that Rockin D's failure to include either individual does not, for purposes of Thomas' filing, expose Rockin D to the possibility of sanctions for failure to disclose under Rule 26(a) because again it is not clear that Rockin D will "use" these individuals to support its claims or defenses.  *See* (R. Doc. 117-3, pp. 1-3).

### b.     Interrogatories Nos. 4 and 5

### i.     Root Cause Analysis

Thomas also argues that he "propounded Interrogatories" to Rockin D which should have

resulted in production of the Root Cause Analysis.  (R. Doc. 147, p. 5).  Thomas does not indicate in his motion when these Interrogatories were propounded, but claims they are attached at "Exhibit 9." *Id.*  However, "Exhibit 9" is the "Root Cause Analysis."  *See* (R. Doc. 147-6, p. 1).[18]

The Court cannot find any indication of these Interrogatories attached to Thomas' motion or supplemental motion.[19]  However, Rockin D attached copies of "Interrogatories 4 and 5" to its Opposition, which are identical to those described in the body of Thomas' motion, and at the April 10, 2013 oral argument did not contest the Court's statement that the attachment reflected Thomas' actual discovery requests.  (R. Docs. 130-4, 147-2).[20]  Therefore, the Court finds that Rockin D's responses, as contained in its Opposition to Thomas' original Motion for Sanctions, can be used in support of

---

[18]Thomas refers to the "Root Cause Analysis" as "Exhibit 8." (R. Doc. 147, p. 5).  There are no attachments to Thomas' motion after "Exhibit 9."

[19]The Court notes that although Thomas has attached Interrogatories dated August 13, 2012 to his Supplemental Memorandum, the page which likely contains Interrogatories Nos. 4 and 5 is blank.  *See* (R. Doc. 147-2, p. 3).  Therefore, it is likely that Thomas neglected to attach the relevant Interrogatories.  In the body of his motion, Thomas argues that Interrogatory No. 4 states, "State the name, address, employer and home telephone number of each <u>person</u> who has given any statement or <u>report</u>, concerning the facts, manner, place, time, or <u>cause</u> of the accident involved in this action or concerning the nature, or extent of Complainant's injuries suffered as a result thereof."  (R. Doc. 147, p. 5) (emphasis in original).  Thomas further argues that Interrogatory No. 5 states, "State the name, address, and home telephone number of each <u>person</u> who claims to have knowledge concerning the facts, manner, place, time or <u>cause</u> of the accident involved in this action, or concerning the nature, or extent of Complainant's injuries suffered as a result thereof."  *Id.*  (emphasis in original).

[20]Local Rule 7.4 states that "[i]f the motion requires consideration of facts not in the *record*, the movant must also file and serve upon opposing counsel a copy of all evidence supporting the motion."  L.R. 7.4 (emphasis added).  In this case, despite Thomas' inexplicable failure to attach the *single relevant page* of its prior discovery requests to its motion, Rockin D had already filed these two documents into the "record," and therefore the fact that Thomas failed to do so at the time he filed his Supplemental Memorandum is irrelevant.  However, at the April 10, 2013 oral argument the Court cautioned Thomas that future failures to file motions without the necessary supporting documentation would lead to dismissal of those motions under L.R. 7.4.  The Court reiterates this cautionary note here, and also remarks that L.R. 7.4 requires a party to support its filings with "citations to authorities."  Despite the relatively varied circumstances which have given rise to the instant motion, Thomas' original Motion for Sanctions contains only a vague citation to Rule 26, as well as a reference to one case, which is bereft of pinpoint citation, case number, court of issuance, or year of decision, which is offered to support the proposition that "Mr. Reich knows that just because statements were taken by an adjusted does not mean that the statements are protected."  (R. Doc. 117-1, p. 3).  Any future filings which fail to conform to L.R. 7.4 will be summarily dismissed.

Thomas' argument despite Thomas' failure to present the same.  Thomas' Interrogatory No. 4, and

Rockin D's response, are as follows:

> **INTERROGATORY NO. 4:**
> State the name, address, employer and home telephone number of each person who has given any statement or report, concerning the facts, manner, place, time or cause of the accident involved in this action, or concerning the facts, manner, place, time or cause of the accident involved in this action, or concerning the nature, or extent of complainant's injuries suffered as a result thereof.

> **ANSWER TO INTERROGATORY NO. 4:**
> Objection.  Rockin[] "D" objects to Interrogatory No. 4 on the grounds that it seeks material protected by attorney/client privilege, constitutes material fathered in anticipation o[f] litigation, and for other reasons as may be alleged at a later date. Without waiving the objection, Rockin "D" directs plaintiff to responses to Interrogatory No. 1 and Request for Production of Documents No. 1.  Additionally, statements were obtained from:
> 1) Mark Clark (May 19, 2012)
> 2) William Bryant (May 19, 2012)
> 3) Don Middlebrooks (May 19, 2012)
> 4) Victorino Martires (May 19, 2012)

(R. Doc. 130-4, pp. 3-4).  Thomas' Interrogatory No. 1 requests a statement of "when the accident

first came to the attention of the defendants, or any employees, or representatives of the defendant,

by whom it was reported, to whom it was reported, as well as the means used, whether oral and/or

in writing."  *Id.* at 1.  Rockin D's response was "Plaintiff's unwitnessed accident came to the

attention of the vessel's crew on April 4, 2012 . . . and an accident report was completed by Captain

Mark Clark."  *Id.* at 2.

Similarly, Thomas' Request for Production No. 1 requested "[e]very accident report, report

of first injury, illness and/or ailment report with respect to the injury and/or occurrence involving

complainant on or about the date of injury in this litigation, which was made by any agent, employee,

or representative of any party or insurer of any party designated above or any governmental agency."

27

(R. Doc. 130-5, p. 1).  Rockin D's response was "Attached is a copy of the Rockin 'D' . . . Vessel Accident Report and the United States Coast Guard Report of Marine Accident, Injury or Death (USCG 2692)."  *Id.*

In this case, there was no ruling on this discovery during the April 3, 2012 oral argument. The Court notes that in Thomas' prior motion to compel (R. Doc. 35) he did not raise either Interrogatory No. 4 or Request for Production No. 1 as a point of contention; in that motion, he only specifically raised Requests for Production Nos. 8, 11, and 15.  (R. Doc. 35-1, p. 1).  He raises the Interrogatory in conclusory fashion now.  The Court notes further that Interrogatories are merely questions.  Thomas fails to point to a request for production which could have reasonably resulted in the production of a root cause analysis.[21]

Thomas' Interrogatory No. 5, and Rockin D's response, are as follows:

**INTERROGATORY NO. 5:**
State the name, address and home telephone number of each person who claims to have knowledge concerning the facts, manner, place, time or cause of the accident involved in this action, or concerning the nature, or extent of the complainant's injuries suffered as a result thereof.

**ANSWER TO INTERROGATORY NO. 5:**
Objection.  Rockin[] "D" objects to Interrogatory No. 5 on the grounds it is overly broad, unduly burdensome, not reasonably calculated to lead [to] the discovery of admissible evidence, invades the mental impressions of counsel, seeks material protected by attorney work product, and for other reasons as may be alleged at a later date.  Without waiving the objection, Rockin "D" directs plaintiff to the individuals identified in Answer to Interrogatory No. 3, any and all health care providers who have treated and/or examined plaintiff, and all individuals identified in Rockin "D"'s Rule 26 Disclosures.

---

[21]The Court does not believe that a "root cause analysis" fits within the proper scope of an "Accident report" referenced in Rockin D's answer to Request for Production No. 1, which was in turn incorporated by reference into Rockin D's response to Thomas' Interrogatory No. 4.

(R. Doc. 130-4, pp. 3-4).  In Interrogatory No. 3, Thomas requested the names of the SEA CECILE's crew at the time of the accident, which Rockin D stated were Mark Clark, Don Middlebrooks, William Bryant, Victorino Martires, Edward Oakley, and Jason Wall.  (R. Doc. 130-4, pp. 2-3).  Rockin D's Rule 26 disclosures included, in addition to these individuals, Detillier, Kennedy, "or other representative," and "any and all physicians and/or healthcare providers who have examined and/or treated plaintiff."  (R. Doc. 117-3, pp. 1-3).

The Court finds that even if it were to revisit its December 10, 2012 discovery Order, Rockin D's response to this Interrogatory was not deficient as regards disclosing the existence of the "Root Cause Analysis" because this Interrogatory, and the production requests incorporated by reference into it, pertain to a list of *individuals* with knowledge.

At the April 10, 2013 oral argument, Thomas admitted at oral argument that he had received the documents at issue from Geco, but that was a "Geco production."  Geco was the parent company which had chartered various boats in this case.  Rockin D argued that there was no "root cause analysis" document to its knowledge.  The Court notes, again, that Interrogatory No. 5 only comprised a *question*, and Thomas failed to point to a particular production request undergirding its argument that the document should have been produced.

### ii.    Adams and Mott

Thomas also argues, albeit obliquely, that Rockin D failed to adequately answer Interrogatories Nos. 4 and 5 because it failed to disclose "Ed Mott" on the same.  Moreover, Adams, who the parties identified as an employee of third party Sea Support, had his name printed on every page of the "Root

29

Cause Analysis" next to the words "approved by."[22]

In opposition, Rockin D argued that neither Adams nor Mott were Rockin D employees. Rockin D argued that Adams' name appeared on the document because the page had been pre-printed.

At oral argument, the parties admitted that Adams' name appeared on several other pre-printed forms such as the inspection report.  The Court noted that if Adams' name had appeared on a large number of documents in this case, it begged the question of whether Rockin D should have identified him as a person with knowledge about the accident, and such a pervasive presence would lead a third party to conclude that he had knowledge of the accident in question in some form.  Rockin D subsequently submitted the deposition to the Court for *in camera* inspection to verify the same.

Upon inspection of Kennedy's deposition, the Court finds that Randy Adams' name does not appear.  By extension, Rockin D's argument that neither itself nor Kennedy believed that Adams had knowledge about the accident is credible, and therefore Rockin D's failure to disclose his name in connection with either Thomas' Interrogatories Nos. 4 and 5 was appropriate.

The same cannot be said for Ed Mott, however.  According to Kennedy's deposition testimony, Mott, a representative from Geco, appears to have participated heavily in the creation of the "Root Cause Analysis," and in so doing, clearly obtained "knowledge concerning the facts, manner, place, time or cause of the accident involved in this action" such that his name should have been disclosed in response to Thomas' Interrogatory No. 5.

For example, Kennedy testified that Mott, who is a "coordinator" for Sea Support, completed

---

[22]Although Thomas does not explicitly mention Adams in his Motion for Sanctions or Supplemental Memorandum, Adams' name appears on the "Root Cause Analysis" document and the April 10, 2013 oral argument centered briefly on Adams' name.

the "root cause analysis" with Kennedy while two of them sat at a galley table in the SEA CECILE. (Kennedy Deposition, p. 69-70, 93).  Kennedy also stated that both his and Mott's handwriting appeared on the document.  *Id.* at 111-12.  Moreover, Kennedy admitted that for certain portions of the "root cause analysis," "Mr. Mott could probably better explain" the issues at hand.  *Id.* at 116.[23]

Although Rockin D argued that it did not construe the Interrogatories so broadly, Rockin D's failure to disclose Mott's name in response to Thomas' Interrogatory No. 5, in light of Kennedy's testimony, does not constitute a reasonable reading of the content of this Interrogatory.  Further, it is clear that from the outset of the suit Rockin D knew that Mott had knowledge of the accident.

However, the Court notes, again, that Interrogatory No. 5 is not a request for *documents*, and Thomas has failed to indicate how Rockin D's failure to disclose Mott's *name* as a person with knowledge of the accident has prevented him from obtaining specific documents.  As to Interrogatory No. 4, which was linked to Request for Production No. 1, the Court notes that Mott appears to have "collaborated" with Kennedy to prepare the "Root Cause Analysis," and therefore is not arguably an individual who would have "*given* any statement or report" regarding the accident.  Rockin D's "interpretation" of this Interrogatory, while not discussed at oral argument, would likely be a narrow one, and the Court finds that unlike Interrogatory No. 5, its argument for narrowing the scope of Interrogatory No. 4 is better grounded.

It is unclear what particular sanction Thomas requests, and the Court construes the vagueness

---

[23]Kennedy also alludes to a "post-accident, near miss, or whatever -- JSA" which was completed by himself and Mott while the two of them were sitting at the galley table to the SEA CECILE.  *Id.* at 69.  Kennedy explains that Mott is a "coordinator" for Sea Support.  *Id.* at 70.  Kennedy stated that after the meeting, Mott took the document and "finished it up." *Id.* at 71.  Kennedy stated that the document would have exited on his email or in Rockin D's records. *Id.*

of Thomas' filing as an attempt to simply place another "thumb on the scale" weighing in favor of sanctions.

### 4.      Sanctions for Violation of Supplemental Discovery Requests

The next issue is whether any sanctions are allowable in connection with the Court's findings regarding Thomas' Supplemental Memorandum (R. Doc. 147).  The Court finds that adding questions regarding the accuracy of the signatures on the Inspection Documents to the limited re-depositions of Clark and Detillier is warranted.  Moreover, as to the "Root Cause Analysis," Rockin D clearly failed to disclose Mott as a potential witness due to his knowledge of the underlying facts of the accident as per Interrogatory No. 5.  However, it is unclear what relief Thomas actually seeks from this argument, aside from providing further illustration that Rockin D has conducted this litigation in bad faith.

As noted above, Thomas has requested a bevy of sanctions.  These include (1) striking the defense of comparative fault, (2) deeming all documents "which are the subject of this motion . . . be deemed admissible," as well as (3) granting "any other appropriate sanction authorized under FRCP 37(b)(2)(A)(i)-(vi).  (R. Doc. 147, p. 6).  Thomas also requests attorney's fees.

As to (1) and (2), the Court notes that no additional documents have never been ordered *produced* based on Rockin D's discovery conduct.  Taking the draconian measures of striking Rockin D's defenses, or making presumptions of admissibility, is not warranted in this case, given (1) the relatively balanced outcomes in the numerous discovery motions filed to date, and (2) the fact that the discovery mishaps which have occurred have not been unduly prejudicial.  *See Diabetes Centers*, 2008 WL 336382, at *2-*4.

As to attorney's fees arising in connection with Thomas' research, composition, filing and

argument of the merits of its Supplemental Memorandum, the Court notes that Thomas' own motion failed to supply the Court with the evidence substantiating its position, and technically failed to satisfy the local rules in several respects.  Indeed, had Rockin D not included the responses to Interrogatory No. 5 to its own motion, the Court would have had no occasion to consider either the "Root Cause Analysis" or the inclusion of Adams' and Mott's names - thereby summarily invalidating more than half of the subject matter of Thomas' Supplemental Memorandum.  As such, the Court finds that Rockin D should not be awarded any fees and costs incurred in filing and arguing R. Doc. 147 in addition to those which have already been granted.

## IV.  **Conclusion**

Accordingly,

**IT IS ORDERED** that Plaintiff, James Thomas', ("Thomas") **Motion for Sanctions for Failing to Produce Statements of Co-Workers (R. Doc. 117)**, and Thomas' **Supplemental Memorandum in Support of Motion for Sanctions for Failing to Produce Statements of Co-Workers (R. Doc. 147)**, are **GRANTED** in part and **DENIED** in part.

They are **GRANTED** as to limited re-deposition of Captain Mark Clark, ("Clark").  Clark's re-deposition shall only cover (1) documentation of safety inspections were performed on the M/V SEA CECILE on March 28, 2012, March 29, 2012, May 25, 2012, May 30, 2012, and June 23, 2012 (R. Doc. 147-1) ("Inspection Documents"); and if applicable, (2) the statements collected by Mark Detillier, Jr., ("Detillier") from Defendant, Rockin D Marine Services, LLC, ("Rockin D") on the date the M/V SEA CECILE returned to port after the April 4, 2012 accident, as specified at the April 3,

2013 and April 10, 2013 oral arguments.  Clark's re-deposition shall be completed no later than thirty (30) days after the issuance of this Order.

They are **GRANTED** as to limited re-deposition of Detillier.  Detillier's re-deposition shall only cover (1) the statements collected by Detillier from Rockin D on the date the M/V SEA CECILE returned to port after the April 4, 2012 accident, as specified at the April 3, 2013 and April 10, 2013 oral arguments; and if applicable, (2) the authenticity of signatures on the Inspection Documents. Detillier's re-deposition shall be completed no later than thirty (30) days after the issuance of this Order.

They are **GRANTED** in part as to Thomas' Request for Production of Documents No. 7, propounded on August 13, 2012.  Rockin D is ordered to supplement its response to include any of the statements obtained by Jack Hoyle, ("Hoyle") no later than ten (10) days after the issuance of this Order, as specified at oral argument.

They are **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that Thomas' request for attorney's fees as contained in R. Doc. 117 is **GRANTED**.  Thomas shall file a motion to fix attorney's fees into the record by **Wednesday, May 22, 2013**, along with: (1) an affidavit attesting to his attorney's education, background, skills, and experience; (2) sufficient evidence of rates charges in other cases by other local attorneys with similar experience, skill and reputation; and (3) the documentation required by Local Rule 54.2.  The fees and costs requested **shall only** reflect the attorney's fees arising in connection with the legal research, composition, and filing of R. Doc. 117, and **shall not extend to any and all costs arising in connection with R. Doc. 147, nor to any participation in depositions or other**

34

**discovery matters in this case**.  Any opposition to the fee application shall be filed no later than

**Wednesday, May 29, 2013**, and the motion shall be heard on that date **without oral argument**.

New Orleans, Louisiana, this 1st day of May 2013.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

35