UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JAMES THOMAS                                    CIVIL ACTION

VERSUS                                          NO: 12-1315

ROCKIN D MARINE SERVICES, LLC                   SECTION: "A" (4)

### ORDER

Before the Court is a **Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 30(d)(2) (R. Doc. 119)**, filed by Plaintiff, James Thomas, ("Thomas") seeking an Order from the Court imposing sanctions on Defendant, Rockin D Marine Services, LLC, ("Rockin D") for its counsel's conduct during several depositions in this case. The motion is opposed (R. Docs. 133, 150). The motion was noticed for submission on Wednesday, April 3, 2013, continued until April 10, 2013, and heard by oral argument on that date.

I.     **Background**

Thomas filed this personal injury lawsuit against Rockin D pursuant to the Jones Act, 46 U.S.C. § 30104, *et seq*. (R. Doc. 1, p. 1).[1]  Thomas' complaint alleges that he worked as a deckhand and relief engineer on the M/V SEA CECILE, a vessel owned and operated by Rockin D.  (R. Doc. 1, pp. 1-2).  Thomas alleges that he sustained serious, disabling, and permanent injuries to his spine

---

[1]Thomas does not explicitly cite to a portion of the Jones Act in his Complaint, except that which establishes this court's jurisdiction: 46 U.S.C. § 688.  (R. Doc. 1, p. 1).

and extremities when the overboard ladder on the M/V SEA CECILE broke free and fell on top of him. (R. Doc. 1, p. 2).  He further alleges that his injuries were proximately caused by the negligence of Rockin D, and seeks $5,000,000.00 in damages for past and future pain and suffering, medical expenses, and lost wages, as well as maintenance and cure benefits.  (R. Doc. 1, pp. 2-3).

The instant motion arises in connection with (1) the deposition of Thomas, taken on October 16, 2012 and completed on November 19, 2012, and (2) the deposition of Mark Law Clark, ("Clark"), a captain on the SEA CECILE who Rockin D employs.  (R. Doc. 119-1, pp. 3, 7).[2]  Thomas requests that the Court Order a re-deposition of Clark, attorney fees and expenses arising in connection with bringing the instant motion, and "sanctions" without further limitation.  *Id.*; (R. Doc. 119, p. 1).  The motion is opposed.  (R. Docs. 133, 150).

## II.    **Standard of Review**

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense."  Rule 26(b)(1).  The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  *Id.*  The discovery rules are accorded broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 177 (1979).  Nevertheless, discovery does have "ultimate and necessary boundaries."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).  Further, it is well established that "control of discovery is committed to the sound discretion of the trial court . . . ."  *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009); *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1096 (6th Cir. 1994).

[2]Although Clark's position is not explicitly mentioned in either Thomas' Motion or the attachments thereto, Clark does describe his employment position in the full deposition which was subsequently submitted into the record by the parties after the April 10, 2013 oral argument.

Under Rule 26(b)(2)(C), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. *Id.* In assessing whether the burden of the discovery outweighs its benefit, a court must consider: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. *Id.* at 26(b)(2)(C)(iii).

Rule 30 provides that unless a Court orders otherwise, "a party may, by oral questions, depose any person, including a party, without leave of court except as provided in Rule 30(a)(2)."[3] Although depositions are customarily limited to 7 hours, "[t]he court must allow additional time consistent with Rule 26(b)(2) . . . if the deponent, another person, or any other circumstance impedes or delays the examination." Rule 30(d)(1). Further, Rule 30(d)(2) provides various procedural mechanisms for limiting a deposition. "The court may impose an appropriate sanction . . . on person who impedes, delays, or frustrates the fair examination of the deponent." *Id.* Finally, Rule 30(d)(3) provides for termination of a deposition:

> At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably . . . oppresses the deponent or party. The motion may be filed in the court where the action is pending or the deposition is being taken. If the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order.

Rule 30(d)(3)(A). Upon termination of a deposition, "the deposition may be resumed only by order

---

[3]Rule 30(a)(2) provides that where a deposition was not stipulated by the parties, and taking the deposition "would result in more than 10 depositions being taken under this rule." Rule 30(a)(2). The parties have not argued that Clark's deposition failed Rule 30(a)(2).

of the court where the action is pending.  Rule 30(d)(3)(B).  Conversely, Rule 37(a) permits a party to file a motion to compel where "a deponent fails to answer a question asked under Rule 30 or 31." Rule 37(a)(3).

### III.    Analysis

#### A.    Scope of Motion

Thomas' motion requests sanctions based on the outcome of Thomas' initial deposition, which took place on October 16, 2012, as well as the deposition of Clark, which took place on February 28, 2012.

In its opposition, Rockin D argues that there are several reasons to deny Thomas' sanction request to the extent that those arise out of his own October 16, 2012 deposition.  First, Thomas unilaterally terminated Thomas' deposition on October 16, 2012.  (R. Doc. 150-2, pp. 11-12). Subsequently, on November 19, 2012, Thomas and Rockin D contacted the Court to request a discovery conference.  *See* (R. Docs. 50, 150-2, pp. 1-2).  During this conference, Thomas requested that the remainder of his deposition take place before the undersigned, which the Court permitted.  *Id.* The deposition was completed under court supervision on November 19, 2012.  *Id.*  Rockin D now contends that "any Motion for Sanctions in connection with the deposition should have been brought in the interim between the first portion and the second portion of the deposition."  (R. Doc. 133, p. 6).

At oral argument, Thomas contended that although he had unilaterally terminated the October 16, 2012 deposition, and had subsequently sought and obtained relief from the Court in the form of the supervised deposition of November 19, 2012, he was nonetheless entitled to seek additional relief four months after the deposition, because he had not previously filed a written *motion* seeking such relief.

Rule 30(d)(3)(A) provides that "[i]f the objecting . . . party so demands, the deposition must

be suspended for the time *necessary* to obtain an order." *Id.* (emphasis added).  Notably, the plain language of Rule 30(d)(3) does not require a party written motion; instead, such a motion "may" be filed into Court.  *Id.*  This plain language flexibility reflects a balance between efficient discovery management and the fact that deposition disputes, unlike many other forms of discovery, occur in real time.

As such, "[t]he courts should apply a more practical and realistic approach evaluating each motion on a case-by-case basis." *Brincko v. Rio Properties, Inc.*, 278 F.R.D. 576, 584 (D. Nev. 2011) (finding, in Rule 30 dispute, that Rule 37(a) and Rule 30(d)(3) were available as deposition enforcement mechanisms).  Indeed, the majority of other recent cases have routinely reached the merits of a deposition disputes regardless of technical compliance with filing requirements.  *See, e.g.*, *South Louisiana Ethanol, L.L.C. v. Fireman's Fund Insurance Co.*, No. 11-2715, 2013 WL 1196604, at *5 (E.D. La. Mar. 22, 2013) (citing cases, and reaching the merits of a dispute where no Rule 30(d)(3) motion was filed).  Nevertheless, the failure of a party to file a motion for a protective order after termination of a deposition should be given substantial weight when the Court crafts a remedy to the parties' discovery problems.  *See id.* at *6; *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 589 n.4 (S.D. Tex. 2011).

Here, the Court notes that Thomas' deposition had been noticed by Rockin D, but unilaterally terminated by Thomas.  Further, over a month passed between the time of initial deposition termination on October 16, 2012 and November 19, 2012 - clearly in excess of any time "necessary" for Thomas to consider the outcome of the deposition, compile his arguments, and present a written motion to the Court pursuant to Rule 30(d)(3).

Instead of filing such a motion, Thomas and Rockin D elected to "jointly" request a status conference on November 19, 2012.  By that time, all facts regarding Thomas' original October 16,

2012 deposition were known to Thomas; indeed, during the November 19, 2012 "status conference" Thomas chose to request specific relief from the Court, in the form of a Court-supervised continuation deposition.[4] The Court's minute entry following the discovery conference reflects the certainty of this relief, as it states, in part, "the Court *ordered* the parties to appear in the presiding U.S. Magistrate Judge's courtroom . . . to conduct the remainder of [Thomas'] deposition."  (R. Doc. 50, p. 1) (emphasis added).

Thomas nonetheless urges the Court to overlook his prior failure to specifically file a written protective order under Rule 30, as well as his failure to request a more specific Order from the Court during the November 19, 2012 discovery conference.  Instead, he asks the Court to reach the merits of a written motion he elected to file almost four months after the deposition issue was originally brought to the Court's attention, on the basis of the technical distinction that he did not "file" a written motion at that time.

Thomas' technical nicety overlooks the realities of judicial discovery management, especially as it relates to "real-time" discovery devices such as a deposition.  *See, e.g.*, *Brinkco*, 278 F.R.D. at 581-85.  As a practical matter, Thomas had adequate time to prepare for the status conference, and an adequate opportunity to be heard at that time.[5]  At the status conference, Thomas requested, and the Court granted, relief in connection with Thomas' October 16, 2012 deposition.  Granting Thomas the opportunity to re-raise objections which he could have sought during his prior status conference would contravene the concept of judicial economy.  *Thomas v. Rockin D Marine Services, LLC*, No. 12-1315, 2013 WL 173767, at *3 (E.D. La. Jan. 16, 2013).

---

[4]Thomas provides no indication that any additional time was "necessary" for him to read the deposition transcript, earmark objectionable sections, and present his grounds for relief in written form.

[5]Thomas provides no explanation for his failure to move for a protective order for almost five months after the conduct occurred.

Therefore, the Court finds that the parties' November 19, 2012 status conference operated as a Rule 30(d)(3) motion, for which the Court granted relief consistent with Rule by re-opening the deposition and supervising the same.  Evaluation of any issues raised by Thomas in connection with his original October 16, 2012 deposition is irrelevant, and the instant motion is appropriately limited in scope to the matters he raises in connection with Thomas' November 19, 2012 reopened deposition, as well as Clark's February 28, 2013 deposition.[6]  Further finding that Thomas' motion for sanctions does not relate to Rockin D's conduct during the supervised November 19, 2012 deposition, his request for sanctions only requires analysis of Clark's deposition.[7]

### B.  Merits of Motion

At Clark's February 28, 2013 deposition, Thomas was represented by attorney Thomas Discon ("Discon"), and Rockin D was represented by attorney Robert Reich ("Reich").

In support of his motion, Thomas argues that Reich conducted himself in violation of Rule 30 on several occasions during Clark's deposition.  (R. Doc. 119-1, p. 3).  As a result of this conduct, Thomas has requested that the deposition be re-opened, and that it be supervised by the Court.  *Id.* at 7.

In opposition, Rockin D argues in general that the Court may impose Rule 30 sanctions only when a person impedes, delays, or frustrates a deposition - and in this case, the deposition was not "impeded," as it lasted approximately three hours and was terminated voluntarily after Discon stated that he had no further questions.  (R. Doc. 133, p. 1).  At oral argument Rockin D also sought to distinguish relevant case law on the basis that sanctions were only appropriate where (1) the deposition

---

[6]As such, there is no need to consider the video recording of the October 16, 2012 deposition which Rockin D has submitted in connection with its motion.

[7]Rockin D also argues that at the November 19, 2012 re-deposition of Thomas, Discon was permitted to engage in some of the same conduct which Thomas now argues is sanctionable.

was terminated, and (2) the fact that the objections were voluminous.  Finally, Rockin D argues that during the deposition Discon contributed to the misconduct; however although it might have been entitled to move for sanctions for this conduct, it had elected not to do so.  *Id.* at 2.

"The examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence."  Rule 30(c)(1).  "During the taking of a deposition the witness has, *in general*, the same rights and privileges as would a witness testifying in court at trial."  8A Wright, Miller, and Marcus, Federal Practice and Procedure § 2113 (2d ed. 1994) (emphasis added); *Plaquemines Holdings, LLC v. CHS, Inc.*, No. 11-3149, 2013 WL 1526894, at *5-*6 (E.D. La. Apr. 11, 2013) (citing Wright, et al. at § 2113, and noting a "degree of pliability" in deposition settings).

Courts in the Eastern District of Louisiana have placed disputed conduct in the context of the entire deposition when considering the merits of a Rule 30 motion.  *See id*; *see also South Louisiana*, 2013 WL 1196604, at *7 (applying context-based standard to motion to compel based on deposition conduct, which did not specifically reference Rule 30(d)(3)); *Offshore Marine Contractors, Inc. v. Palm Energy Offshore, L.L.C.*, No. 10-4151, 2013 WL 1412197, at *3-*4 (E.D. La. Apr. 8, 2013) (analyzing instances of complained-of deposition conduct arising from Rule 30 motion for sanctions in relation to one another, not independently); *Bordelon Marine, Inc. v. F/V KENNY BOY*, Nos. 09-3209, 09-6221, 2011 WL 164636, at *4-*6 (E.D. La. Jan. 19, 2011) (same); *Landers v. Kevin Gros Offshore, L.L.C.*, No. 08-1293, 2009 WL 2046587, at *4 (E.D. La. July 13, 2009) (same).

### 1.    "Speaking Objections"

#### a.    HIPAA Objection

Thomas argues that Reich "advised . . . Clark that he did not have to answer questions concerning his medical history concerning his previous injury to his spine from a recent car accident in 2007."  (R. Doc. 119-1, p. 3).  According to Thomas, Clark also refused to answer questions about

his recent medical treatment or the location of the 2007 accident.  *Id.*

In opposition, Rockin D argues that Reich was entitled to instruct Clark not to answer questions regarding privileged medical history.  (R. Doc. 133, pp. 2-3).  Rockin D also points out that Thomas "offers no argument in the motion as to why medical treatment for a prior injury in June 2007 is in any way relevant to this incident," and that Reich properly sought to limit questioning on the topic because it was "annoying, harassing, and irritating."  *Id.* at 3.

Discon's line of questioning initially pertained to the number of depositions that the witness Clark had previously given.  (Clark Deposition, pp. 13-14).[8]  After Clark indicated that one of his previous depositions had related to Clark's alleged personal injuries to his back, Discon asked Clark a series of questions including, "Did they recommend surgery for your back?" "Do you have any problems with your back now?" "Are you on any medication in connection with your back?" and "when's the last time you've seen a doctor?"  *Id.* at 9-11.  At this point, Reich interjected, stating, "I understand if you're saying he has some physical issue that would affect his ability to work as a captain, you certainly can explore that.  But I believe that HIPAA precludes your asking questions. He's not a plaintiff."  *Id.* at 11.

In response, Discon stated, "Make your objection, Bob.  Don't make a speaking objection. Make your objection to the form."  *Id.*[9]  Discon then admitted to Clark that "I can't get [personal] information.  I don't have a release from you.  And I'm not trying to get the information."  *Id.* at 14. Clark then objected to the question, stating that "it sounds like you are, because you're asking me questions about it."  Nevertheless, Discon refused to withdraw his question regarding Clark's last

---

[8]Although excerpts of Clark's deposition were submitted by both parties, at oral argument the Court requested a complete copy of the deposition, which was later provided to the Court.  All citations to the transcript reflect the deposition pages of this subsequent submission.

[9]Counsel for Thomas refers to Reich as "Bob."

doctor's visit, arguing that "it's a discovery deposition . . . . And we get to discover things about you." *Id.* at 13.

Under Rule 30, "[a]n objection must be stated concisely in a nonargumentative and nonsuggestive manner.  A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."  Rule 30(c)(2); *see Offshore Marine Contractors*, 2013 WL 1412197, at *3-*4. "Depositions frequently have been unduly prolonged, if not unfairly frustrated, by lengthy objections and colloquy, often suggesting how the deponent should respond."  Rule 30, 1993 Advisory Committee note.  "Directions to a deponent not to answer a question can be even more disrupting than objections."  *Id.*

Other courts have noted that "if counsel's questions go so far beyond the realm of possible relevance where the deposition is being conducted in an abusive manner . . . then it would be permissible to instruct a deponent not to answer and to move for a protective order under Rule 30(d)(3)."  *Rangel*, 274 F.R.D. at 591 (citing cases).  Moreover, as noted above Rule 26 provides that a party's entitlement to discoverable evidence extends only to evidence that is either "relevant to any party's claim or defense," or "reasonably calculated to lead to the discovery of admissible evidence."  Rule 26(b)(1).

Upon evaluation of the transcript, the Court agrees with Clark that Discon's line of questioning, although initially related to Clark's deposition history, veered into an in irrelevant and intrusive discussion about Clark's personal medical history.  Discon's argument in support of this turn of events was apparently that he was entitled to "discover things" about a third party so long as that party was willing to submit to a deposition.  The Court cannot except such opaque justifications.  *See Oppenheimer Fund*, 437 U.S. at 351.

In context, the Court finds that Reich's "speaking objection" was offered as a means of requesting that the scope of Discon's inquiry be limited to the subject matter of the lawsuit. *See id.* at 11-12. Similar attempts to clarify the direction or scope of a question have been found to be permissible, even if in theory they constituted "speaking objections." *See Offshore Marine Contractors*, 2013 WL 1412197, at *4 (finding that, *inter alia*, a "lengthy" objection was warranted where question did not adequately specify which corporate entity question pertained to); *Landers*, 2009 WL 2046587, at *4 (finding that instruction not to answer was permissible where counsel repeatedly interrupted a witness, posed improper questions, and conducted the deposition in a "tone of voice [that could] best be described as yelling."). Although the Court finds the overall *length* of Reich's speaking objection might lead to heightened skepticism in other circumstances, the fact that Discon's last question, "when's the last time you've seen a doctor?" was clearly not relevant, and the fact that Discon refused to withdraw the question after both Reich and Clark objected, are sufficient grounds to deny this request for sanctions as it pertained to this line of questioning.

### b.    Speaking Objection - Statement Concerning Deckhand

Thomas also argues that Reich later made a series of speaking objections in connection with a line of questioning which pertained to whether a deckhand on the SEA CECILE secured anything on the deck. (R. Doc. 119-1, p. 4). In opposition, Rockin D argues that Reich was simply attempting to clarify the questions posed and keep the deposition focused, as Discon had "jump[ed] back and forth between time frames." (R. Doc. 133, p. 4).

Here, the Court has examined the "objection" in context, and finds that this issue appears to have arisen after a terse exchange about time differences. This began when Discon asked Clark a question relating to "10 o'clock when Don went off," to which Clark responded "Don didn't go off duty until noon," and Discon apologized. (Clark Deposition, Feb. 28, 2013, pp. 44-45). At this point

Reich interjected, stating, "It'd be helpful if you wouldn't intentionally misstate the testimony. Perhaps it's done because you're not listening, and that's okay, but that clearly was a misstatement of what the witness testified to." *Id.* at 44.  In response, counsel for Thomas stated, "[w]ell, again, if you would keep your rude and personal comments to yourself, which you have a difficulty doing, I'd appreciate it." *Id.* at 44-45.

Other courts have declined to award sanctions where, despite deposition objections "often mushroomed into improper speaking objections" which "interfered substantially" with the taking of the deposition, the deposition could have been completed. *Phillips v. Manufacturers Hanover Trust Co.*, 1994 WL 116078, at *3-*4 (S.D.N.Y. Mar. 29, 1994).  Courts citing *Phillips* have reinforced the notion that such conduct is not sanctionable so long as the opposing party is permitted to complete the deposition and the conduct in question does not devolve into ad hominem attacks. *See, e.g.*, *Synventive Molding Solutions, Inc. v. Husky Injection Molding Systems, Inc.*, 262 F.R.D. 365, 374-75 (D. Vt. 2009); *Applebaum v. National Westminster Bank*, 2011 WL 8771843, at *3-*6 (E.D.N.Y. Oct. 5, 2011) (finding that although some deposition conduct "was intermittently, at best, intemperate," the conduct neither "destroyed the deposition or frustrated the fair examination of the deponent.").

Here, the series of exchanges which Thomas claims to be "speaking objections" are, for all practical purposes, neither a wilful attempt to impede the deposition by voicing improper speaking objections, nor a genuine attempt to clarify an ambiguous circumstance.  Instead, they are a meaningless exacerbation of a mutually unprofessional exchange by two attorneys who have allowed the heat of the moment to subsume their better judgment.

Discon and Reich plainly levied ad hominem attacks against one another, a situation neither counsel was required to tolerate. *See Plaquemines*, 2013 WL 1526894, at *5 (finding termination of deposition permissible after opposing counsel criticized attorney's professionalism).  Having agreed

to continue with the deposition and actually complete it to their satisfaction, however, the Court cannot find that these mutual attacks sabotaged the deposition to a degree which would warrant the imposition of Rule 30 sanctions.[10]  *Synventive*, 262 F.R.D. at 374-75.

### c.        "If You Can Answer" Instruction to Deponent

Thomas also argues that Reich's "speaking objections" induced the witness to fail to answer a question regarding typical back deck duties in 3-5 foot seas.  (R. Doc. 119-1, p. 4).  According to Thomas, Reich's interjections involved the following statements: "And if you can't answer it," "If you can answer it, do. If it's too vague and you can't answer it," and "object to the form of the question; too vague to be intelligently understood.  But answer if you can."  (R. Doc. 119-6, pp. 1-5).

In opposition, Rockin D argues that a request for clarification is appropriate.  (R. Doc. 133, p. 5).  Rockin D argues that to the degree Clark failed to answer certain deposition questions, that owed to the fact that the deposition questions were vague, requests for clarification were ignored by Discon, and the same question was asked multiple times.  *Id.*  Rockin D also argues that during Thomas' November 19, 2012 supervised deposition, Discon was "permitted on multiple occasions to add to his objections 'if you can answer the question, please do' or words to that effect."  (R. Doc. 150-2, p. 3). Rockin D argues that due to the fact such conduct was acceptable to the Court, it should not form any basis for relief.

The exchange in contention is as follows:[11]

> Q. Do you have a practice as a captain at what size seas you shut down

---

[10]The Court also notes that counsel for Thomas made several speaking objections during the course of the November 19, 2012 deposition, several of which appear to be an attempt to clarify.  *See, e.g.*, (Thomas Deposition, Nov. 19, 2012, at pp. 7-8, 14, 21, 140, 156-57).  Further, Reich states that during Thomas' October 16, 2012 deposition, Rockin D requested that counsel for Thomas silence an ipad that he had in deposition.  *Id.* at 84.  Although Thomas then silenced the device, he kept the device on vibrate, because he was "expecting an important call concerning a possible emergency."  *Id.* at 85.

[11]Unless otherwise stated, "Q" refers to a question posed by Discon, and "A" refers to an answer given by Clark.

operations, deck operations?

A. For working outside?  Could you be more specific?  You mean, deck operations?  That could be anything.

. . . .

Q. Then what is your practice when seas are three to five feet, sir?

A. Three to five feet, it depends what somebody wants to do.  You're asking a very vague question.  What do you mean by deck operations?  Give me a definition.  What do you mean by deck operations?  That could be anything.  Do you mean chipping and grinding?

. . . .

Q. What would you allow your crew members to do in three- to five-foot seas?

A. Not any kind of deck maintenance. People go outside. Deck operations is a very vague term.  I want you to be more specific with your question.  Ask me a specific activity that I would either allow or not allow.

Q. I'm asking you -- and I'm going to ask you the same question I asked -- what do you allow your crew members to do on deck in seas of three to five?

MR. REICH: And if you can't answer it --

MR. DISCON: You answered it and said: I don't let them go out and chip and do stuff on the deck.  You told me what you don't let them do.  I'm asking:  What do you let them do?  And I'm relying on you to tell me.  What in three- to five-foot seas --

MR. REICH: If you can answer it, do.  If it's too vague and you can't answer it --

MR. DISCON: I'm sorry.  I'm sorry. Bob, if you're suggesting to him to say that it's too vague or that he can't answer it, which you are, then you're not doing it right, and I will get the judge on the phone.  Make your objection, and then stop coaching the witness.

MR. REICH: For the record, Mr. Discon is yelling at me and the witness which is . . . unprofessional.

MR. DISCON: I'm not yelling at the witness at all.

MR. REICH: And two, the witness is not appreciative of your attitude, Mr. Discon.

MR. DISCON: Captain, I've asked you, in three- to five-foot seas, what would you allow your crew to do --

MR. REICH: Object to the vagueness of the question.

MR. DISCON: -- on the deck.  That's what I've asked you.

A. I've already -- I'm the one that brought up the subject of the question being very vague, because I want you to be more specific.  You know --

Q. Sir, I've asked you what -- in your experience, what have you allowed your crew members to do in three- to five-foot seas?

A. Well, I told you what I wouldn't allow.

. . ..

Q. What duties would you allow or have you allowed your crew members to do or to perform in three- to five-foot seas on the deck?

MR. REICH: Object to the form of the question; too vague to be intelligently understood.  But answer if you can.

MR. DISCON: I'm asking you to answer, sir.

14

> A. Tie the vessel up.
> Q. Anything else you can think of?
> A. No.
> Q. When you say tie the vessel up, tie the vessel up to what?
> A. Whatever we might be tying it up to.
> Q. What could that be?
> A. Gee, I don't know.

(Clark Deposition, Feb. 28, 2013, pp. 57-62).

No controlling precedent has interpreted Rule 30 to determine the permissibility of an instruction such as "*if you can answer.*"  In this jurisdiction, however, opinions already cited indicate that an instruction *not* to answer can be permissible where discovery conduct has become abusive, and that a lengthy colloquy was also permissible where a question was vague.  *See Landers*, 2009 WL 2046587, at *4; *Offshore Marine Contractors*, 2013 WL 1412197, at *3-*4.[12]

Here, the Court notes that it was Clark, and not Discon, who requested clarification of the question and an explanation of the term "deck operations."  Clark also provided specific examples of why he believed the questions posed were vague - particularly referencing the term "deck operations" as being too generalized.  It was only after the witness on three occasions requested clarification did Reich begin with speaking instructions to the witness, which therefore suggests that the question, as originally stated, was vague, and Clark's requests for clarification were reasonable.

These facts diminish Thomas' argument that Reich's interjections constituted impermissible "coaching" of the witness.  Further, Reich's "speaking objections" are not predicated by "lengthy" colloquy which might otherwise make them objectionable.  Ultimately, neither the "instructions" nor the colloquy prevented Discon from obtaining an answer to questions as to what activities Clark both

---

[12]One federal court, interpreting this specific instruction found that where the phrase "if you an answer" was predicated by a lengthy colloquy, it was impermissibly suggestive of the deponent's answer.  *Saint Anes Development Co., LLC v. Trabich*, 2009 WL 324054, at *11 (D. Md. Feb. 9, 2009) (applying phrase against Rule 30 1993 Advisory Committee's Notes and District's Local Rules).

would and would not allow in three- to five-foot seas, even if responses such as "Whatever we might be tying it up with," and "Gee, I don't know" could have been more eloquently phrased. *See* (Clark Deposition, Feb. 28, 2013, at 61-62).

Therefore, setting these objections in the context out of which they arise, the Court finds that overall they are not sanctionable under Rule 30.

### d.     Speaking Objections Invoking Attorney-Client Privilege

In support of his motion, Thomas argues that Reich raised improper speaking objections after Discon asked Clark about the length of time he had prepared for the deposition with Reich.  (R. Doc. 119-3).  In opposition, Rockin D argues that "[c]ommunications between a current corporate employee and the attorney representing the corporation are protected by the attorney-client privilege when they concern related litigation."  (R. Doc. 133, p. 3).  As such, Rockin D's objection was proper insofar as it pertained to "questions regarding the specifics of what undersigned and Clark discussed prior to his deposition."  *Id.*

Here, Discon's question giving rise to the disputed objection was "[s]o how much time did you meet with Bob and *discuss your deposition and questions about the accident?*"  Clark Deposition, Feb. 28, 2013, p. 27) (emphasis added).  At that point, Reich interjected and stated, *inter alia*, "The first part of the question was fine.  It was the second part."  *Id.*  The Court finds that although Reich fails to specify what the "second part" of the question pertained to, it most likely includes the phrase "questions about the accident."

Under Rule 30(c)(2), an attorney may clearly object on the basis of privilege.  *Id.*  The attorney-client privilege is designed "to encourage full and frank communication between attorneys and their clients."  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  In a corporate environment, the privilege extends even to lower-level employees who nonetheless provide the attorney with

16

information which assists him or her to render legal assistance to the client corporation.  *See, e.g.*, *United States v. El Paso Co.*, 682 F.2d 530, 538 n.8 (5th Cir. 1982) (citing *Upjohn*).  "[F]or the privilege to be effective, it must be predictable."  *United States v. Jicarilla Apache Nation*, 131 S.Ct. 2313, 2328 (2011).  "Inquiry into the general nature of the legal services provided by counsel . . . is not protected by the privilege."  *Nguyen v. Excel Corp.*, 197 F.3d 200, 206 (5th Cir. 1999). Similarly, information which is collateral in nature, such as the length of time during which a privileged communication occurred, is not protected. *E.E.O.C. v. Johnson & Higgins, Inc.*, 1998 WL 778369, at *13 (S.D.N.Y. Nov. 6, 1988) (citing *Refuse & Environmental Systems, Inc. v. Industrial Services of America*, 120 F.R.D. 8, 10 (D. Mass. 1988)).

Here, Reich's objection to the "second part" of the communication regarded the time which Reich and Clark had discussed "questions about the accident."  A reasonable reading of the substance of Discon's question would not likely lead to the conclusion that an inquiry into protected substance was sought.  As a result, the objection was improper.  Notwithstanding this fact, Discon rephrased his question to exclude all possibility of such an inquiry, stating, "So how long, total, was it that you met with Mr. Reich concerning your preparation for your deposition?"  (Clark Depo, Feb. 28, 2013, p. 28). Clark then responded, "about an hour."  *Id.*  The Court does not find that this objection, without more, should lead to an imposition of sanctions.

### 2.    Counsel for Rockin D Cuts Off Deponent During Answer

In support of his motion, Thomas argues that Reich stopped Clark from answering one deposition question completely, and, according to Thomas, told the witness to cease testifying.  (R. Doc. 119-5).  In opposition, Rockin D first argues that he did not cut off Clark, but merely clarified whether he had finished his answer.  (R. Doc. 133, p. 5).

In this case, the exchange in question involves the following:

17

> Q: I'm asking what did you discuss?
> . . . .
> Q. That's before you went on duty?
> A. That was before I went on duty.
> Q: So what time was that about, 10, 10:30, 11?
> A: Oh, I guess maybe about 11.  Because I had already had breakfast and made coffee and I had already poured my second cup of coffee and getting ready to go upstairs.  And he looked at --
> MR. REICH: I'm sorry.  I thought he finished his answer.  Had you finished your answer?
> THE WITNESS: I guess.  I mean, if he has any more questions about that.  He asked me what was discussed.
> MR. DISCON: My question is: I want to hear the entire discussion, if there was anything else to your discussion.
> . . . .
> A: No, I'm not finished.

(Clark Deposition, Feb. 28, 2013, pp. 52-53).  Here, the specific question to which Reich "interrupted" pertained to the time at which Clark had certain discussion.  Clark's answer appears to have veered into an unrelated description of events about his morning routine.  Nevertheless, Reich's interruption of the witness' answer is best viewed as an indirect "cue" for the witness to stop speaking, which constitutes inappropriate deposition conduct.  As with other instances in this Order, following the objection Clark continued to answer the question posed.  As such, this interruption, without more, cannot give rise to a sanction under Rule 30.

### 3.    "Combative Tone" of Deposition

Finally, Thomas argues that Reich "set the combative tone of the deposition early."  (R. Doc. 119-1, pp. 4-5).  Thomas argues that due to Reich's setting of this "tone," Clark refused to answer a subsequent question regarding completion of accident reports.  (R. Docs. 119-1, pp. 4-5; 119-7, pp. 1-2).  In opposition, Rockin D characterizes Thomas' contentions regarding Clark's refusal to answer as "completely petty," and argues that Discon asked Clark the same question multiple times. (R. Doc. 133, pp. 5-6).

The exchange in question is as follows:

18

Q. In either accident report, the vessel accident report or the Coast Guard accident report, did you make any indication or any notes in these reports that James went outside against your advice?

A. No.

Q. Okay. Can I have them back please, if you're finished?

A. No, these forms -- these forms are -- they don't ask questions like that.  There's not a place for that particular bit of information to be put here.

Q. And you didn't add that information on your own, did you?

A. No.  It says: Description of casualty.  Describe how accident occurred.

Q. And you didn't add --

A. It doesn't ask you for a reason.

Q. And you didn't add any of those comments yourself, did you?

A. I filled it out the way it was supposed to be filled out.

Q. And you didn't add any comments that James, against your advice, went outside; is that correct?

A. I filled it out the way it was supposed to be filled out, and that's going to be my final answer.

(Clark Depo., pp. 67-68).

It is not clear what Thomas is referring to when he asserts that Reich set the "combative tone" of the deposition.  However, determining this issue is irrelevant because even assuming that Reich was wholly at fault for establishing the "combative tone" of the deposition, the Court can find no meaningful link between the deposition's unpleasant ambiance, and Clark's answers in the above-referenced exchange.

What this exchange reflects is not Clark's attempt to elude an answer, but rather his refusal to answer the question in the manner which Thomas wished him to.  Specifically, Clark stated that the "accident report" did not require him to put down "reasons" for the accident.  Therefore, because a "no" answer to any of Discon's questions might lead to the mistaken inference that Clark had purposefully failed to include any information about the reason for Thomas' accident on his form, he qualified his answers to indicate that the form did not *require* him to provide this information.  Thomas is not entitled to re-depose Clark on a topic which has already been adequately answered.

C.      **Attorney's Fees and Sanctions**

As noted above, Thomas has requested (1) a continuation deposition of Clark, (2) judicial supervision of that continuation deposition, and (3) attorney's fees, costs, and "sanctions" arising in connection with the instant motion.  Rockin D opposes all of three requests.

The plain language of Rule 30(d)(2) provides that the Court may impose on a party who impedes a deposition "an appropriate sanction - including the reasonable expenses and attorney's fees incurred by any party."  *Id.*[13]  Such fees may be also "be imposed on a non-party witness as well as a party or attorney."  *Landers*, 2009 WL 2046587, at *2 (quoting Rule 30(d) Advisory Committee's Note, 1993 amendments).  The word "incurred" appears in the Rule without limitation, and "[t]he full scope of the sanctions available under Rule 30(d)(2) is not expressly described in the text of the Rule."  *Glick v. Molloy*, 2013 WL 140100, at *2 (D. Mont. Jan. 10, 2013).  Many courts have construed Rule 30(d)(2) to apply to circumstances where a party's conduct at a deposition warranted remedial action.  *See, e.g.*, *Rangel*, 274 F.R.D. at 594 (improperly instructing deponent not to answer); *Bordelon Marine*, 2011 WL 164636 at *3-*6 (numerous objections to deposition questions); *Pinson v. Northern Tool Equipment Co., Inc.*, 2012 WL 5286933, at *3 (S.D. Miss. Oct. 24, 2012) (same).

Recent federal court decisions in Louisiana have applied Rule 30's prospective remedy broadly.  *See Howell v. Avante Services, LLC*, No. 12-293, 2013 WL 824715, at *5 (E.D. La. Mar. 6, 2013) (Vance, J.) (finding that payment of attorney's fees for deposition of non-party was an "appropriate sanction" under Rule 30(d)(2)); *Soule v. RSC Equipment Rental, Inc.*, No. 11-2022, 2012 WL 5060059, at *1-*2 (E.D. La. Oct. 18, 2012) (applying Rule 30(d)(2), and ordering parties not only to conduct all future depositions "in a professional manner," as well as enjoining specific conduct);

---

[13]In contrast, as to "expenses," Rule 30(d)(3) states that Rule 37(a)(5) applies to such an award.  Under Rule 37(a)(5), "expenses" are limited to those "incurred in making the motion, including attorney's fees."  *Id.* at 37(a)(5)(A).  Therefore, this reference does not limit the broad potential award of sanctions under Rule 30(d)(2).

*Todd v. Precision Boilers, Inc.*, 2008 WL 4722338, at *1 (W.D. La. Oct. 24. 2008) (ordering re-deposition where deponent's attorney refused to allow questioning for the full 7-hour period specified in Rule 30(d)(1)).

### 1.    Continuation Deposition

As to Thomas' request for a continuation deposition, he does not indicate the appropriate scope of any proposed continuation deposition of Clark, obligating the Court to consider whether any elements of Clark's motion are cognizable under Rule 30's "broad" remedial powers.   Upon consideration of the entire transcript, the Court finds that a continuation deposition is not warranted as it relates to the conduct which Thomas complains of in the *instant* motion.  All, or almost all, of the questions which Discon posed to Thomas were ultimately answered.

The Court notes, however,  that Thomas has filed a separate motion for sanctions based upon the discovery conduct in this case, for which the Court has issued an Order permitting a limited re-deposition of Clark.  (R. Docs. 117, 147, 168, pp. 34-35).[14]  This Order neither expands or modifies the scope of the re-deposition previously ordered.

### 2.    Judicial Supervision of Re-Deposition

Although the Court has found that none of the conduct here independently warrants a re-deposition of Clark, the Court finds it appropriate to consider whether the discovery conduct arising in *this* motion warrants judicial supervision of the re-deposition which the Court previously ordered.

Thomas argues that because Reich failed to conform his deposition conduct to the standards of Rule 30, and because several other depositions have been scheduled, unless the Court actively

---

[14]These motions, which Thomas has filed, are a "Motion for Sanctions for Failing to Produce Statements of Co-Workers," (R .Doc. 117), and a "Supplemental Memorandum in Support of Motion for Sanctions for Failing to Produce Statements of Co-Workers," (R. Doc. 147).  *See* (R. Doc. 168, pp. 33-34).  The Court's Order in the instant motion does not impact the Court's prior Order.

intervenes in the dispute the complained-of conduct is likely to continue.  (R .Doc. 119-1, pp. 6-7). In opposition, Rockin D argues in general that Reich's conduct amounted to "zealous advocacy," which could be expected in a contested matter.  (R. Doc. 133, p. 8).[15]

The Court has recently noted that Discon has made numerous unflattering characterizations of Reich throughout this litigation, and that Discon's criticism of Reich has grown sharper as the litigation progressed, to include descriptions of Reich's litigation conduct as "deceitful[]" and musing as to "what world Mr. Reich is from."  (R. Doc. 168, p. 14 n.9) (listing statements made by Discon in both signed court filings, as well as at oral argument).  Discon has made similar comparisons to Rockin D's additional counsel, Lawrence Plunkett ("Plunkett").  *See id.* (noting that at a November 21, 2012 oral argument, Discon stated that Plunkett was "drinking the same kool aid that Mr. Reich drinks.").  Similarly, during Clark's February 28, 2013 deposition, Reich stated on the record that Robert Lansden, ("Lansden") "just openly laughed, and that's absolutely unprofessional, intentionally intended to irritate or inflame the situation."  (Clark Depo., p. 76)  Earlier in the deposition, Reich also accused Discon of "intentially misstat[ing] Clark's testimony.  *Id.* at 44.

Despite the escalating tension of this litigation, in which every attorney of record has now been accused in one way or another of acting unprofessionally, the Court finds that Thomas' request for judicial supervision is denied.  Clark's re-deposition, unlike his original deposition, is strictly limited in scope to (1) safety inspections performed on the SEA CECILE on five specific dates, and (2)

---

[15]Thomas also argues in support of request for both sanctions and a supervised continuation deposition that Reich "has been sanctioned before for unsuitable deposition behavior," and that unless the Court intervenes, this pattern of unsuitable deposition conduct will likely continue.  (R. Doc. 119-1, p. 6).  The Court notes that several recent federal cases from this district involving a request for sanctions in connection with deposition conduct have in fact involved Reich, although the results of those cases are mixed.  *Compare Offshore Marine Contractors*, 2013 WL 1412197, at *4 (declining to impose sanctions), *with Bordelon Marine*, 2011 WL 164636, at *6 (imposing sanctions), *and Landers*, 2009 WL 2046587, at *4 (same).  However, the Court finds that it would be inappropriate to accept Thomas' invitation to consider Reich's conduct in matters not currently before the undersigned in considering whether sanctions for this particular discovery conduct should or should not be granted.

statements collected by Mark Detillier, Jr., ("Detillier") on the date which the SEA CECILE returned to port after the April 4, 2012 accident.  *See* (R. Doc. 168, pp. 33-34).

> **3.      Attorney's Fees, Costs, and "Sanctions"**

Thomas also moves for an award of attorney's fees, costs, and "sanctions."  For the reasons already noted in this opinion, the Court does not believe that the sum total of the deposition conduct described above can be fairly apportioned in this instance.  *See, e.g.*, *Landers*, 2009 WL 2046587, at *4.

## IV.    Conclusion

Accordingly,

**IT IS ORDERED** that Plaintiff, James Thomas, ("Thomas") **Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 30(d)(2)** (**R. Doc. 119**) is **DENIED**.

New Orleans, Louisiana, this 6th day of June 2013.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

23